## WILSON AND WIFE v. SPRING.

| 38 | 181 |
|----|-----|
| 62 | 18 |
| 38 | 181 |
| 71 | 393 |
| 38 | 181 |
| 73 | 353 |
| 77 | 479 |
| 38 | 181 |
| 81 | 302 |
| 38 | 181 |
| 83 | 370 |

1. EVIDENCE: *Decree; When admissible alone.*
   A decree divesting and vesting title, and reciting the facts and proceedings upon which it is founded, is admissible as evidence in a subsequent suit for the party claiming under it, without producing the whole record of the cause in which it was rendered, where it is shown that the record is lost or destroyed, and cannot be produced.

2. SAME: *Unrecorded deed.*
   The acknowledgement of the execution of a deed of conveyance, as required by the statute, does not alone authorize its introduction as evidence. It must also be filed and recorded, or its execution proven at the trial.

3. SAME: *Of title to land.*
   Title to land must be proved either by force of the statute of limitations or by showing chain of title from the government, or at least from a source common to both parties, which implies admission of title up to that source on both sides.

Wilson and Wife v. Spring.

4. DECREE DIVESTING TITLE: *Who bound by.*
A decree divesting title out of a party binds him, his heirs and all sub-
sequent purchasers from him, except purchasers for valuble consid-
eration and without notice after the expiration of a year from its ren-
dition, when it has not been recorded in the recorder's office under
sec. 3642 Gantt's Digest.

5. STATUTE OF LIMITATIONS: *A statute of title.*
The Statute of Limitation is not merely defensive, but confers title
which may be asserted by ejectment by the original holder, his heirs
or assigns, and possession under a deed, for the statute period, of a
part of the tract described in it, confers title to the whole.

6. ADVERSE POSSESSION: *Presumption of continuance.*
Adverse possession of land once taken under color of title, is presumed
to continue, when there is no proof of an interruption in the posses-
sion within seven years. The burden of proof of *abandonment or*
*interruption* is upon the adverse party.

7. ATTACHMENTS: *Sale of land not attached void.*
In attachment suits where there is only constructive service on the
defendant the court acquires no jurisdiction over any property not
attached, and a sale of any other under a personal judgment and exe-
cution rendered in the case, is void.

8. CAVEAT EMPTOR: *Purchaser at execution sale.*
The purchaser of land at execution sale is not chargeable with notice
of mere irregularities in the suit, but if there be no jurisdiction or
other defects rendering the judgment void, the case is different.


APPEAL from *Crawford* Circuit Court.

Hon. THOMAS MARCUM, Special Judge.


*Duval & Cravens*, for appellants:

1.   The decree alone without the whole of the record and
papers was not admissible.   To have any validity or effect
it was requisite to show that the court had jurisdiction of
the defendants as well as of the subject matter.     2 *Whar-*
*ton Ev.*, sec. 824 *et seq.* ; 1 *Greenleaf*, 511.   The whole record
should have been produced or exemplified.    2 *Whart. Ev.*,
824 ; *Jay* v. *East Livermore*, 56 *Maine*, 107 ; *Hawks* v.

*Truesdell*, 49 *Mass.*, 507 ; *Com.* v. *Front*, 76 *Pa.*, 376 ; *Davidson* v. *Murphy*, 12 *Conn.*, 213 ; *Belding* v. *Muller*, 2 *Lansing*, 470.

2. The plaintiff, to make out title, was bound to show that the land belonged to Wilson, a valid attachment, judgment, execution, and sheriff's deed. Plaintiff relied alone on the recitals of the sheriff's deed. Defendant offered to prove that part of the land was not attached. It was shown that at the time of the sale, and afterwards, all of it was in the actual possession of Hiero T. Wilson, who had a title. *Parsons* v. *Paine*, 26 *Ark.*, 124.

In a proceeding between a purchaser and a person other than the execution debtor, title must be shown in the debtor at the time of the sale. *Rover on Jud. Sales*, 1078 ; *Hartley* v. *Ferrell*, 9 *Fla.*, 374 ; *Whalley* v. *Doe*, 10 *Geo.*, 74.

3. "Judges shall not charge juries with regard to matters of fact, but shall declare the law." *Sec.* 23, *Art.* 7, *Const.* The court erred in charging the jury "that the documentary evidence established title in plaintiff," &c., &c.

4. If premises become vacant for a day, the owner will be deemed in the constructive possession by reason of his title—the ouster must be continued uninterruptedly during the whole time. *Dew* v. *Mulford*, 1 *Hayer*, 320 ; *Pedruch* v. *Searl*, 5 *Sug. & R.*, 240.

5. There was no proof that Spring and his grantees held adverse possession for either five or seven years continuously.

*M. H. Sandels*, for appellee :

1. The records were shown to have been destroyed by fire, prior to the trial. The certified copy was the best evidence in existence. The record *recites* service on Hiero T. Wilson, which is conclusive of that question. *Gantt's Dig.*,

*sec.* 4739. Ample foundation for the copy was laid by the testimony of Walker. *Greenleaf on Ev.*, (12 *Ed.*) 509, *and note* 4 ; *Freeman on Judgments*, (*2nd Ed.*) *sec.* 407, *and note* 2 ; *Davis* v. *Pettie*, 11 *Ark.*, 359 ; *Mason* v. *Ball*, 26 *Ark.*, 165.

3. The presumption is that the. court acted properly. *Freeman on Judgment, sec.* 124.

4. The second objection untenable. *Hughes* v. *Watts*, 26 *Ark.*, 228.

5. The court was right in construing the documentary evidence and charging its effect. *Thompson on Charging the Jury, sec.* 12 *and notes.*

EAKIN, J. Pauline G. Spring sued certain tenants in possion, and recovered from appellants who claimed the property in right of the wife, through Hiero T. Wilson, and who came in and defended, the following tracts of land :

S. ½ of S. E. ¼, Sec. 19, in T. 9, N. of R. 32 W.
S. ½ of S. W. ¼, Sec. 20, in T. 9, N. of R. 32 W.
N. E. ¼, Sec. 30, in T. 9, N. of R. 32 W.
S. E. ¼, Sec. 30, in T. 9, N. of R. 32 W.
And also :
N. E. ¼, Sec. 29, in T. 9, N. of R. 32 W.
N. W. ¼, Sec. 29, in T. 9, N. of R. 32 W.

These lands lie in a body, but it will be necessary to consider the lists separately, the last two being on somewhat different footing.

After a motion for a new trial, and other regular proceedings for the purpose, the defendants prayed an appeal; and bring up the evidence by bill of exceptions.

One of the grounds of the motion for a new trial, and the one most convenient to consider first, is that the verdict of the jury is contrary to the evidence.

Upon both sides, there was some documentary evidence of title, and plaintiff also claimed a title as matured by adverse possession under the statute of limitations. A short abstract of the evidence is essential to a clear understanding of the opinion.

With regard to the first four tracts the plaintiff attempted to deraign title by showing a decree of the Circuit Court in Chancery, rendered in the year 1852, in a certain suit in which Constant A. Wilson was complainant, and Hiero T. Wilson, with others, was a defendant; by which decree the defendants were all divested of their title to these lands, and the complainant clothed with a full title as against defendants. The decree recites all that was necessary to its validity in a collateral proceeding.

Next followed a sheriff's deed to Solomon Clark for these lands, and also for the last two, in section 29, thus embracing the whole body recovered in this suit. The deed was subsequent to the decree above mentioned, but in the same year. It recites a judgment recovered by Bailey against Constant A. Wilson, and an execution in the nature of a *venditioni exponas*, to sell the lands conveyed, issued on the sixteenth day of July, 1853, in which there is a clerical omission of a tract; the levy, which embraces all the subdivision, and the sale to Clark.

Then followed successive conveyances from Clark to Nicholas Spring, on the twenty-eighth of November, 1853; from Spring to William A. Stephenson, in the year 1866, and from Stephenson to the plaintiff, Pauline, on the eleventh of June, 1870. These conveyances embraced all the lands, and seem to have been duly acknowledged. The last, however, had never been filed for record. It was nevertheless admitted against the objections of the defendants, without further proof than the acknowledgment.

The documentary evidence on the part of defendants con-
23—38

sisted of two patents from the United States to Hiero T. Wilson, both long anterior to the decree in Chancery, for the N. E. and N. W. quarters, respectively, of said section 29. Also a deed from said Hiero for *the whole* of said body of lands, to defendant, Mary Wilson, executed on the sixth of June, 1871. This deed was duly acknowledged, and was filed for record on the twenty-first day of April, 1873. There was some general oral evidence that Hiero T. Wilson claimed, and had purchased the other lands outside of section 29, but nothing sufficient to show title. For plaintiff there was evidence tending to show an adverse possession for the time required by the statute, and some evidence per contra for defendant.

We do not know the ground upon which the jury based their verdict, and as there was evidence of adverse possession on the part of plaintiff, which they were entitled to consider, and which if they thought it sufficient, would support a general verdict, we cannot say the motion for a new trial on this point should have been granted. The force and scope of the documentary evidence will be considered in noticing other grounds.

The motion objects further, that "the court permitted illegal and incompetent evidence to go to the jury on the part of the plaintiff, over the objection of defendant." What this evidence was is not pointed out in the motion. The briefs of counsel refer chiefly to the admission of the decree in Chancery, but for which it is contended, and we we think rightly., the sheriff's deed could not form a link in the chain of title.

1. EVI-DENCE: Decree: when admissible alone. The point relied upon is that a decree in Chancery, reciting the former proceedings, is not admissible as evidence of title without the introduction of the whole record.

In this case it was shown that the courthouse had been burned, and all the records of the case destroyed. The

existence of the certified copy of the decree itself is not explained. It had, perhaps, been taken out for preservation. Being in existence, however, it was the best evidence attainable, not only of the fact that such a decree was rendered between the parties named, but by its recitals, of the previous proceedings also.

Generally, the authorities say that a judgment or decree, to constitute a link of title, must be accompanied by the whole record. But the rule is not without exceptions, and is at all times limited in its application. For instance, as stated upon authorities, by Mr. WHARTON in his work on *Evidence*, a record deteriorated by time, and imperfect, may be admitted to prove such portions of it as may be attainable; and so also of other fragments of ancient records, when no fuller proof is attainable, provided they have internal evidence of authority.

Besides, the objection to the admission was too sweeping. Decrees or judgments alone, by the general practice, are admissible to prove the fact that they were rendered, and as a basis for subsequent proceedings, where the object is not to make them proof of the facts therein contained. For instance, they are sufficient to support an execution and sale, and a commissioner's or sheriff's deed.

Whilst, therefore, we are clear that, in any view of the law, the peculiar circumstances of this case justified the admission of the decree, without the whole record, and that the court did not err in its ruling, we do not mean to say that it would have been error to admit it without proof of the loss of the other parts of the record. A decree which *proprio vigore* vests title, seems, in our State, to stand in the place of a deed from one party to the other, or of a commissioner's deed on a sale duly confirmed. It operates *in rem*, as it were, upon property within its jurisdiction. It cannot be collaterally attacked for irregularity

*Effect of decree vesting title.*

in the proceedings, if it be in a case where jurisdiction has attached to the property, and the persons to be affected. The recitals in it, of notice to the person, are evidence of the fact, and the court has general jurisdiction of all the lands in the county. The decree itself is a muniment of title, and may be recorded as such in the recorder's office, without the accompanying proceedings. (*Gantt's Digest, sec.* 3642.)

The rule requiring the introduction of whole records, where jurisdiction has been established, seems, from the reasons usually given, to have been directed to cases in which a judgment was offered as an estoppel as to some facts or conditions necessary to be established in order to sustain it, and was for the purpose of showing by the pleadings and proceedings what facts were really in issue. It can have no reasonable application to a case where a decree *proprio vigore* establishes the status of property, as to ownership, and binds all parties to the suit in that regard, wholly regardless of what the previous proceedings may have been. That is the case now in judgment. What good purpose could the rest of the record serve? The decree is, in any case, admissible to show that it was rendered, and the law gives it effect until reversed or shown to be void. Its recitals show *prima facie* that there was jurisdiction, and it can only be voidable. Its effects, until reversed, are the same, whether the proceedings were regular or irregular, whatever may have been the course of pleading or the nature of proof. Why, then, in such cases, impose upon the litigant the expense of procuring a voluminous record? or upon the court the trouble and delay of examining it, when in any event the *effect* of the decree in divesting and investing title would be the same?

We are not prepared to say, therefore, upon reason and authority, that it would have been error to admit the decree

as *prima facie* proof in a chain of title, without the proof of the loss of the other records.

The tendency of modern rulings is very strong, to uphold the final action of courts of general jurisdiction, and to presume all things in their favor, where the parties have been before the court and there has been no appeal. It would be long to review the many American decisions upon the subject. Many of them, holding the introduction of the whole proceedings to be necessary, have been, with reference to the inferior courts, in favor of which the presumption is less strong, and all have been, so far as they have come under our notice, upon peculiar circumstances, not in conflict with the general views above expressed.

I think it would not be contended that if the Chancery Court had, for good reasons in this case, ordered a sale of the lands by a commissioner, and a deed had been made and confirmed, it would have been necessary to go behind the decree to sustain the deed. The decree itself is as potent as a deed, and performs the commissioner's office.

Before leaving the subject, I think it will make my own meaning clearer, to refer to a decision of HOPKINS, J. in the U. S. Circuit Court for the Northern District of Illinois— the case of *Kibbe* v. *Dunn*, 5 *Bissell*, 233. The question there was whether a decree could be received in evidence, to establish a right, when portions of the record had been omitted—in other words, without the whole record. There was nothing to show that the heirs at law of a certain mortgagor had been made parties. It was held that the court might lawfully, in support of the decree, supply by intendment several *material and necessary facts* which *ought to have appeared* in the record. It was declared to be the policy of the law to *sustain* titles derived through decrees of the court, especially as to old decrees, where parties with opposing interests

have slept upon their rights.  The rule was declared to be "that the court will presume everything and act to have been done necessary to give jurisdiction and authority to the court pronouncing the judgment or decree, which the record does not show was *not* done—particularly when the record produced shows that all of the record and proceedings have not been preserved."  The spirit of this decision is that of plain, good sense.

2. EVI-
DENCE:
Unrecor-
ded deed
is not, un-
less its ex-
ecution
be proved
on the tri-
al.

The grounds of the motion embrace the objection to the admission of the deed of Stephenson, the immediate grantor of plaintiff.

The deed was not a writing purporting to have been executed by one of the parties, nor was it referred to and filed with the proceedings.  It was not therefore within the purview of *sec.* 2495 of *Gantt's Digest*, so as to be read in evidence, unless the genuineness of the signature should be denied by affidavit.

At common law a deed, or other instrument of writing of a private nature, could not be read in evidence without proof of its execution.  It did not prove itself.  By the Revised Statutes, and by act of Jan. 12th, 1853, (see *Gantt's Digest, secs.* 854, 855 and 859,) it was provided that all deeds, duly executed, proved or acknowledged, and recorded as authorized or required by law, should themselves, or by certified copies, be received in evidence, without further proof of execution.  This does not apply to a deed which is only acknowledged or proved, and never filed for record.  It may be argued with much logical force, that the filing and recording of deeds are mere ministerial acts. That the substantial *proof* of the execution is made by the acknowledgment, and that the certificate of the fact of acknowledgment cannot be collaterally attacked.  Why then make the mere *act* of filing, and the actual record, essential to their authenticity?  We can give no satisfactory answer,

Wilson and Wife v. Spring.

but "*ita lex scripta est.*" The Legislature has imposed
that condition in such plain terms as to leave no room for
construction nor grounds to suspect a mistake; and if
admissible at all, without further proof, it must be under
the statute. We think the court erred in admitting the
deed of Stephenson to plaintiff, without further proof of its
execution.

Proceeding to the instructions we find that the first given
on motion of the plaintiff to be of extraordinary length. It
sets forth the lands sued for, the admissions of defendants
that their tenants were in possession, and informs the jury
that the only question left for them to try was whether or
not the plaintiff was the owner of the premises and entitled
to possession. It goes on to recite the documentary evi-
dence of the plaintiff from the decree down, step by step,
describing each at length, to the extent of two pages of the
transcript, and then instructs them that such documentary
evidence establishes a *prima facie* title in plaintiff, sufficient
for her right to recover, "unless overturned by the testi-
mony adduced by the defendants."

The instruction is unnecessarily prolix, we think, and like
all long instructions, not apt to be well understood by the jury.
Besides, it is not strictly corect, and was likely to mislead.
It is true, *as law*, that all the evidence admitted,
and recited in the instructions, would, and did, show a *prima
facie* case of title in plaintiff to the first list of lands—those
included in the decree, and to this extent she could recover,
unless the *prima facie* case had been overturned. But
it is not true, as law, that the documentary evidence showed,
*prima facie*, any title to the lands in section 29. In mak-
ing out title by the party having the onus, he must do so
either by force of the statute of limitations, or by showing
claim of title from the government, or at least from a source
common to both parties, which implies admission of title up

*[margin note: 3. Same: Of title to land.]*

Wilson and Wife v. Spring.

to that source, on both sides. A decree against Hiero T. Wilson binds him, his heirs, and all who claim under him by subsequent conveyance, unless it be purchasers for valuable consideration, and without notice, after the expiration of a year from its rendition, when it has not been transferred to, and recorded in the Recorder's office under the provisions of the Revised Statutes. The defendants make no such plea, and nothing of the kind is insisted upon by counsel in their brief, and so we may concur in the instruction, so far as it relates to the decreed lands. The chain of documentary evidence, once admitted, makes a chain of title as to them, so far as its *prima facie* aspect is concerned.

But we are unable to see how a purchaser of lands, under an execution sale, or attachment, against Constant A. Wilson, and without any showing of how said Constant himself acquired title, can make a *prima facie* case in favor of one who must succeed upon the strength of his own title, against one who claims from a different source. A deed gives *color* of title, but is not even *prima facie evidence* of title against a stranger without showing title in the grantor, and several successive transfers cannot alter the case. Nor can lapse of time, until aided by the statute of limitations. There is absolutely no proof at all of title in Constant A. Wilson, to the lands in 29, at the time of the levy and sale to Clark.

The first instruction, however, does not stop here, but proceeds to recite the patents issued to Hiero T. Wilson; and his deed to the defendant, Mary, for all the lands; and that there was proof both for and against the seven years possession; of which the jury were to judge. The court thereupon instructed that the documentary evidence established title in the plaintiff to all the premises, *except* the lands in section 29. The meaning of all the foregoing is, that although the plaintiff made a *prima facie* case as to all,

yet after the evidence of defendant, he had succeeded in *establishing* title, by documentary evidence, only to the lands in the decree.

There was therefore no actual error in the result of the instruction prejudicial to defendants. Although the court may have erroneously supposed that the documentary evidence of plaintiff showed a *prima facie* title to the land in section 29, yet the jury were advised that such primary aspect of the case had been changed by the documentary evidence of the defendant. This was made plainer by the second instruction, which was to the effect that the only remaining question for the jury to determine concerned the title to the two tracts covered by Hiero's patent.

The third instruction was, that even if Clark acquired no title to the lands in section 29, by means of the sheriff's deed, yet that he and his grantees, either immediate or in succession, that is Spring and Stephenson, might acquire title by five years adverse possession.

5. STATUTE LIMITATIONS: A Statute of title.

We see no objection to this; and it was correctly followed by a general instruction that if the plaintiff's grantors held adverse possession for seven years, they acquired title which passed to the plaintiff. It is well settled in this State, that the statute is not merely defensive, but confers title which may be asserted by ejectment, and the benefit of the statute enures not only to the purchaser at execution sale, but to his heirs and assigns.

The jury were further instructed that the sheriff's deed made color of title, and that seven years possession under such color, of a part, would establish title to the whole. This is familiar law.

Specially the court instructed for the plaintiff, by the eighth instruction, that if the jury found that Nicholas Spring, one of the grantors in plaintiff's chain, went into possession and held through Clark, under the sheriff's deed, that the pre-

6. ADVERSE POSSESSION: Presumption of its continuance.

24–38

sumption would be in favor of the continuance of the pos-session in himself and grantors, in the absence of proof of the interruption of that possession before the term of seven years expired.

We think the presumption a fair one, that a possession under color of title, once adversely taken, has continued in the grantee, and passed to his grantees in turn, any inter-ruption of it, must be shown by the other party. Other-wise it would be necessary to make some proof of posses-sion each day. If the land had been in fact abandoned, or there had been any interruption of the possession in Spring and his grantees it devolved on defendants to show it.

Reviewing these instructions given for the plaintiff, we find in them no substantial error. They seem fairly to em-body the law.

A number of instructions were given at the request of defendant, and two were refused, numbered 4 and 5.

7. ATTACH-MENTS: Sale of land not attached, void. The court by the former refused to instruct; that to sus-tain the sheriff's deed in the Bailey suit it devolved upon the plaintiff to show a valid levy of an attachment upon the land, a judgment in favor of the plaintiff in attachment, execution and sale of the land ; and if the jury find that the writ of attachment was not levied upon any part of the land in controversy, the sale of such part was void, and as to that they should find for the defendants.

It is certainly the well settled rule that at the time of the transactions in question, the court in attachment suits, where there had been only constructive service, acquired no jurisdiction over the person of the defendant, or any other property than that attached, and that a sale of any other, by virtue of a personal judgment, execution and levy would be void. But to have given the instruction would have been submitting to the jury a mere question of law. All the evidence on this point was documentary. The court had

already considered it, and advised the jury that so far as the documentary evidence was concerned, the plaintiff had made out her case as to all the lands save those in section 29.

Upon re-examination of the documentary proof on this point we find that the sheriff's deed does not refer to the suit as one by attachment. It recites that Baily had recovered judgment in the Circuit Court against Constant A. Wilson, on the fourteenth of February, 1851 ; that an execution issued on the sixteenth day of July, 1852, commanding him to make the amount out of the specific lands, describing them, with a clerical omission, obvious on the face of the papers ; that it was levied on the "said" lands, this time describing them truly, and proceeding with the advertisement, sale, &c. This was certainly a good deed *prima facie*. The evidence of the defendants reveals the further facts that it was a suit by attachment, and there had been no personal service. This is done by a certified transcript of the order of publication. It further shows, however, that all the lands in question had been taken in attachment, except that, instead of "S. $\frac{1}{2}$ of S. W. $\frac{1}{4}$ of section 20," there is described the "S. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of sec. 20." The latter tract is not claimed in any way by any of the parties in this suit. The obvious mistake is corrected in the sheriff's recital of the lands against which the execution is directed, whilst at the same time he himself makes another just as obvious, by wholly omitting one of the quarter sections, and afterwards both are corrected in the description of "said" lands which were exposed to sale.

All attorneys and land agents are well aware of the multiplicity of mistakes which take place in the description of land by fractions of sections and by townships and ranges, and base lines and meridian lines. The changes of fractions and numbers and cardinal points are so constant, and in illegible or careless manuscripts mistakes are so frequent with

DESCRIPTION OF LANDS: Obvious mistakes should be corrected by the court.

the most careful, that courts should not hesitate to make the proper corrections where they are indeed obvious.   To allow such mistakes, discovered after long years, to defeat a title at law altogether, or to drive parties into chancery for relief, at great expense, would be a very great hardship.   Of course courts of law should be well assured of the mistake, but when discovered they should not hesitate in futherance of justice to construe one cardinal point or one fraction for another.   This is done sometimes against the letter of statutes, and may be done also in the construction of deeds. The instruction had no sound basis in the evidence.   It seems probable upon the face of the documentary evidence, and the judge had the right to determine, that the lands recovered had been, in fact, taken in attachment.

8. CAVEAT EMPTOR:   The last error complained of in the instructions is the Purcha-refusal of the 5th for defendant.   It was asked that the ser at exe- cution court instruct the jury that the plaintiff, having purchased sale. at execution sale, must be held to have had notice of all irregularities in the proceedings.   This was not law.   Mere irregularities do not vitiate a sale made under execution. If the court have no jurisdiction, or there be any substantial defect rendering the judgment void, the case is different.   But that is not the language of the instruction. There was no error in refusing it.

On account of the error in admitting the deed of Stephenson to plaintiff without proper proof, the defendants should have been granted a new trial.

To that end reverse the judgment and remand the case.