44

Michael M. HERRING, et ux *v.*
Howard BRAWDY, et al

74-348                                              522 S.W. 2d 369

Opinion delivered May 5, 1975

*Nabors Shaw*, for appellants.

*Joe H. Hardegree*, for appellees.

LYLE BROWN, Justice. This action concerns the
ownership of a patented slate placer mining claim in Polk
County described as the W ½ of SW ¼ of NW ¼ of Sec. 20,
T. 3 S, R. 28W. For their title the appellants, the Herrings,
who brought this suit, rested their title on a deed from a
trustee in bankruptcy in Oklahoma City. Appellees based
their title on a deed which passed title out of M. E. Herring.
The chancellor held that the subject lands were not processed
through the bankruptcy proceedings involving the estate of
M. E. Herring and the title of Howard and Paul Brawdy was
therefore superior to that of Michael M. Herring and wife,
appellants herein.

We shall refer to the described twenty acres as deeded lands. Technically it is appropriate to refer to the twenty acres as a patented slate placer mining claim. That is because it was so patented by the United States Government. A patent to a placer claim passes to the holder title to the surface. 54 Am Jur 2d § 83, Mines and Minerals. If land is located and held as a placer mining claim under the act of Congress it is a mining claim before patent in every sense of the word and it does not cease to be a mining claim when by a patent from the government the fee is transferred to the locator or his assigns. *Berentz* v. *Belmont Oil Co.*, 84 P. 47 (1906).

In 1960 M. E. Herring, father of appellant Michael M. Herring, acquired an option to purchase the twenty acres in question plus some mining claims staked and claimed on government land adjacent to the twenty acres of fee or private land. The option expired on December 16, 1960, but was kept alive by $50.00 monthly installments under the extension lease.

M. E. Herring had a close acquaintance with appellee Paul Brawdy. The latter drove Herring around on trips, and Brawdy loaned Herring money to make the monthly installments to extend the option. In April 1961, at the invitation of Mr. Herring, who was old and having money troubles, Paul Brawdy took assignment of the option for approximately $2,500 and expenses to clear title; Brawdy obtained title to the twenty acres plus assignment to him of the option of the mining claims heretofore mentioned.

After obtaining title to the twenty acres and assignment of the mining claims, Paul Brawdy learned of a bankruptcy proceeding in federal court in Oklahoma City involving M. E. Herring and the appellant Michael M. Herring, among others, and some companies in which the Herrings had some interest.

The trustee in bankruptcy caused Paul Brawdy to be made a party to the bankruptcy proceedings and Brawdy was directed to show cause why he should not be required to turn over the twenty acres of fee land and the mining claims in Arkansas. At this time Paul Brawdy had deeded the twenty

acres to his brother, appellee Howard Brawdy, but the deed was for the purpose of securing the brother who had advanced money to Paul Brawdy, and the deed to Howard was unrecorded until a later date. In any event Paul Brawdy and his attorney joined issue in the Oklahoma City bankruptcy proceeding and litigated the twenty acres plus the mining claims. After the show cause order the proceedings concerning the bankruptcy and the twenty acres may be succinctly described. On May 22, 1962 there was a hearing in the United States District Court on the show cause petition. An order was issued therein vesting legal title in certain described properties, real estate and mining claims in the trustee. The twenty acres with which we are concerned was misdescribed as the S ½ of the SW ¼, NW ¼.

On October 2, 1964, the U. S. District Judge in Oklahoma City, having jurisdiction over the bankruptcy proceedings, heard a petition by the trustee for an order authorizing him to sell at private sale for cash the subject twenty acres. That petition was granted, the sale was confirmed and the trustee executed a deed to appellant Dorothy E. Herring to the twenty-acre tract of land, the subject of this litigation.

From an examination of all the entries made in the bankruptcy proceedings it is clear to us that those proceedings included the twenty-acre tract and that all parties so understood it. This is especially true when we consider the fact that the twenty acres consisted of a patented slate placer mining claim, and it was evident to all concerned that the court was reaching out after all the mining claims held by the bankrupt. The fact that an accurate description of the twenty acres was erroneous in one of the documents is not fatal. In *Wilson v. Spring,* 38 Ark. 181 (1882) we said:

> All attorneys and land agents are well aware of the multiplicity of mistakes which take place in the description of land by fractions of sections and by townships and ranges, and base lines and meridian lines. The changes of fractions and numbers and cardinal points are so constant, and in illegible or careless manuscripts mistakes are so frequent with the most careful, that

courts should not hesitate to make the proper corrections where they are indeed obvious.

We think it is evident that the failure to include the twenty acres in one of the bankruptcy court documents with a proper description should have been treated by the chancellor to be a misprision and that the court-approved trustee deed to Mrs. Herring constituted good title as against appellees, the Brawdys.

Reversed and remanded.