Rector v. Collins et al.

---

## RECTOR v. COLLINS ET AL.

46  167
60  307
46  167
71  618
46  167
75  272

1. REFORMATION OF CONTRACT: *Promissory note.*
   Chancery will not reform a promissory note payable *in futuro*, with 10 per cent. interest from date, by adding the words "until paid," though the parties intended it to bear that interest after as well as before maturity, if they omitted the words only because they thought them unnecessary. A contract written as the parties intended it to be written cannot be reformed for their mistake of its legal effect.

2. INTEREST: *When excess paid not recoverable.*
   Where the maker of a promissory note payable *in futuro*, with 10 per cent. interest from date, omitting the words "until paid," pays that rate of interest after the maturity of the note, he cannot recover the excess paid over 6 per cent. accruing after maturity.

Rector v. Collins et al.

APPEAL from *Sebastian* Circuit Court.
Hon. E. F. TILLER, Circuit Judge.

*F. W. Compton,* for appellant.

*First*—The court erred in refusing to reform the notes, so as to make them bear 10 per cent. interest, after as well as before maturity. Mere mistakes of law are not remediable in equity. But where an instrument is drawn and executed, which is intended to carry into effect an agreement, whether in writing or by parol, previously entered into, but which by mistake of the draughtsman, either as to facts or *law,* does not comply with, or which violates the manifest intention of the parties to the agreement, equity will correct the mistake, so as to make the instrument conform to the agreement. *1 Peters, 1; 2 Curtis, C. C., 277-9; 98 U. S., 85; 13 Ark., 129.*

*Second*—The court erred in crediting the amount of the stated account with the interest paid by Collins after the maturity of the note, in excess of 6 per cent. This interest was paid under a mutual misapprehension of the legal effect of the notes, and was a mere naked mistake of law. *12 Pet., 32; 1 ib., 1; 15 Ohio, 218; 34 Miss. (5 George), 528; 7 Wend., 315.*

*U. M. & G. B. Rose,* W. M. *Cravens* and *W. H. H. Clayton,* for appellees.

*First*—Equity will not undertake to reform a written instrument except upon the clearest evidence. *1 Ves., 317; 1 Bro., 94; 5 Mason, 577; 2 Johns. Chy., Gellaspie v. Moore; 14 Ark., 487; 15 ib., 277.* In this case it is not pretended that the notes were not written as intended by the parties. It is only alleged that there was a mistake as to their legal

effect, that both parties supposed the notes would draw 10 per cent. until paid, and that if they had understood the law they would have drawn the notes differently. In such cases equity can afford no relief. *Kerr on Fraud and Mistake, Am. ed., 428; 2 Pom., Eq. Jur., sec. 843; 41 Ark., 495; 8 Wheat., 174; 49 Ind., 434; 47 ib., 98; 18 Mich., 354; 2 Abb., C. C., 471; 1 Russ. & M., 418; 2 Mylne & K., 251; 3 Comst., 19; 45 Iowa, 322; 48 N. Y., 708; 42 Iowa, 107; 32 ib., 138; 40 Ind., 366; 2 Md., 25; 6 ib., 479; 46 Ill., 439; 98 U. S., 85.*

*Second*—The court properly credited Collins with the interest paid in excess of 6 per cent. This is not an action for the recovery of money paid under a mistake of law, but all it presents is the existence of a large debt due by Collins to Rector and payments by Collins from time to time on general account, and Rector had no right to apply the payments to the satisfaction of interest in excess of that not contracted for.

*Third*—In the account, which the court below found to be an *account stated*, the interest is computed at 10 per cent. throughout. This may have been done with knowledge of the law, or ignorance of it; but if an error of law, it is one the courts will correct. *2 Story Eq. Jur., 12 ed., sec. 524; 11 Wheat., 256; 2 Atk., 112; 7 Penn St., 305; 3 Dessan. (S. C.), 93.* But this was not a mistake of law, but of fact; not of the legal effect of the instrument, but an error as to what the instrument really was. *Pollock Cont., p 391.*

*Fourth*—Appellees have not appealed, but if the decree is opened the entire account will be restated. *40 Ark., 394.* Appellant should be charged rent at the real rental value of the place, not what she received. *36 Ark., 17.*

BATTLE, J. The object of this action is the recovery of a balance due on certain promissory notes executed by

James M. Collins to Elias Rector, in his lifetime, for the purchase-money of certain lands described in the complaint, which were sold by Elias Rector to Collins, and the enforcement of a vendor's lien.   The complaint alleges that Rector agreed to sell the land to Collins for the sum of $21,120, to be paid in three installments, and that Collins agreed to execute to him his three several promissory notes for the purchase-money, bearing interest at the rate of 10 per centum per annum from their respective dates until paid; "and that in pursuance of such agreement, Rector executed a bond for title, and Collins executed to Rector three promissory notes, each for the sum of $7,040, bearing date respectively, one on the 23d day of November, 1866, and the other two on the 1st day of January, 1867, and payable respectively, one on the 15th day of January, 1867, one on the 1st day of January, 1868, and one on the 1st day of January, 1869, with interest at 10 per cent. per annum from their dates, but which were meant and intended by the parties to bear interest at the rate therein expressed from the dates thereof until paid, the words '*until paid*' being by mistake, omitted at the end of the interest clause; and that in the computation and payment of accrued interest on the notes, from time to time, after their execution, both parties construed the notes as bearing the same rate of interest after as before maturity, as it was understood and agreed before, and at the time of their execution, that they should."

That Collins, shortly after the execution of the title bond, took possession of the bargained premises, and remained in possession thereof until evicted in the year 1878, as hereinafter stated.

That on the 30th of July, 1878, Rector by deed of that date, conveyed all his right, title and interest in and to the said premises to the plaintiff, Jemima C. Rector, his wife,

and thereby assigned and transferred to her the said purchase note, dated the 1st of January, 1867, payable two years after date, and a certain other note bearing date the 11th of April, 1874, executed by Collins to Rector for the payment of $3,813, due one day after date thereof, and bearing interest at the rate of 10 per cent. per annum from the 1st day of January, 1874, until paid, which said last mentioned promissory note was given for the principal and interest then remaining due and unpaid on the original purchase note payable on the 1st day of January, 1868, above mentioned.

That on the 7th day of July, 1878, the plaintiff instituted an action of ejectment against Collins for the recovery of the bargained premises, and that such proceedings were thereupon had, that afterwards, on the 24th day of August, 1878, the plaintiff by the consideration and judgment of the court recovered possession of said premises with nominal damages and costs, and that since said recovery said plaintiff was put in possession of the premises and had remained in possession thereof from thence hitherto.

That on the 6th day of April, 1876, Collins, who was then greatly in want of means and hard pressed by Rector and others of his creditors, proposed to Rector that if he would join him in the execution of a note to the defendant, William G. McPhetridge, and pledge the one he held on him, Collins, for $3,813.04 heretofore mentioned, as collateral security for the payment thereof, he would borrow that amount from McPhetridge, let him, Rector, have a part of it in part payment of what he owed him on said contract of sale and purchase and give him a mortgage upon his crop then planted, and to be planted and produced on the bargained premises that year, to secure the balance of what should be found due and unpaid upon said contract

of sale and purchase, and to indemnify him against his lia-
bility on the note to be executed to McPhetridge, to which
proposition Rector assented; and that he and Collins then
proceeded to ascertain the amount then remaining due and
unpaid on said contract of sale and purchase, after allow-
ing all the credits to which Collins was entitled; and after
stating the account between them and striking a balance,
Collins was found to owe Rector the sum of $10,853.04,
together with the interest thereon from the 1st day of Jan-
uary, 1874; and that thereupon Rector joined Collins in
the execution of the note to McPhetridge, and indorsed
and delivered to him the note he held on Collins for
$3,813.04 as collateral security, and Collins executed to
Rector a mortgage upon his crop for the purpose proposed
by him as aforesaid, whereby he acknowledged that he was
then indebted to Rector in the just and full sum of
$10,853.04, with interest due thereon from the 1st day of
January, 1874, evidenced by two certain promissory notes
therein described, as follows, to-wit.: " The first dated Jan-
uary 1, 1867, payable two years after date to the said Elias
Rector, or order, for the sum of $7,040 in current funds,
with interest thereon at the rate of 10 per cent. per annum
from date till paid; and the other, dated April 11, 1874,
payable one day after date to the said Elias Rector, or
order, for the sum of $3,813.04, with interest thereon at
the rate of 10 per cent. per annum from January 1, 1874."

That there is due and owing to plaintiff, for and on ac-
count of the principal debt and interest on said contract
of sale and purchase, after allowing all the credits thereon
to which Collins is legally entitled, the sum of $14,422.74.

The prayer of the complaint is: " That the original pur-
chase note described in the complaint as being for the pay-
ment of $7,040, dated 1st of January, 1867, payable two
years after date, and bearing interest at the rate of 10 per

cent. per annum from date thereof, be reformed and corrected by the insertion of the words '*until puid*,' so as to make it bear interest at the rate aforesaid, from date until paid, according to the true intention of the parties thereto at the time it was made.

"*Second*—That an account be taken of the amount due and owing to her from Collins on account of said contract of sale and purchase.

"*Third*—That judgment may be rendered against Collins for the amount which may be found owing by him to her on taking said account.

"*Fourth*—That the lands be sold to satisfy the judgment, and for other relief."

Collins answered. "The answer admits the sale of the lands for $21,120, and the execution of the bond for title; alleges that for one-third of the purchase money ($7,040), Collins drew a draft on the firm of Collins & Lanigan in favor of Rector, payable the 15th day of January, 1867, which was paid; and admits that for the residue of the purchase money Collins executed to Rector two promissory notes, each for the sum of $7,040, dated January 1, 1867, the one payable twelve months after date, and the other two years after date, each with interest thereon at the rate of 10 per cent. per annum; but denies that the notes were meant or intended to bear interest at the rate therein expressed from the dates thereof until paid, or that they were ever so considered and treated by Collins in any manner whatever, or that he ever paid any sum of money as interest accruing thereon, or that he ever made or authorized any such computations of interest as was alleged in the complaint to have been made."

It denies that Collins, on the 6th day of April, 1876, the time when he executed a mortgage to Rector, owed Rector $10,853.04, as mentioned in the mortgage; and states, that

Rector v. Collins et al.

prior to that time he made numerous payments, in money and property, on the notes for the purchase money; that Mrs. Rector has been in possession of the land sold to him,. and that for the time she has been in possession she should' be charged with $3,520 per annum, and that the aggregate amount of such payments and rents exceed the entire amount due on the notes, computing the interest on them at 10 per cent. per annum from date until maturity, and at 6 per cent. after maturity till paid.

On the hearing the circuit court found there was no mis- take made in the draft of the original purchase notes; and referred the cause to a master to state an account between plaintiff and Collins. The master stated the account.. Both parties excepted. The court sustained a part of the exceptions of both parties and overruled part; and found Collins indebted to plaintiff in the sum of $1,649.67, and. decreed accordingly. Plaintiff excepted and appealed.. Neither of the defendants has appealed.

1. REFORM-
ATION OF
CONTRACT:
Promis-
sory note.
*First*—Appellant insists that the court below "erred in refusing to reform the notes for the purchase money of the bargained premises, so as to make them bear interest at the rate of 10 per cent. per annum, after as well as before ma- turity."

In *Carnall v. Wilson, 14 Ark., 487*, Mr. Justice Walker, in delivering the opinion of this court, said :

" The evidence upon which a written instrument or con- tract is altered or corrected must be clear and free from doubt. In *Henkle v. The Royal Exchange Insurance Com- pand, 1 Ves., 317*, Lord Hardwicke said the court had juris- diction to relieve in respect to plain mistakes in contracts in writing. In *Ingram v. Child, 1 Bro., 94*, Lord Thurlow said, 'that a mistake creating an equity dehors the deed should be proven as much to the satisfaction of the court as if admitted.' Judge Story, in *United States v. Monroe,*

*5 Mason, 577*, said, 'in cases of asserted mistakes in written instruments, it is not denied that a court of equity may reform the instrument, but such a court is very slow to exercise such an authority, and it requires the clearest and strongest evidence to establish the mistake. It is not sufficient that there be some reason to presume a mistake; the evidence must be clear, unequivocal and decisive.' And in *Gillaspie v. Moore, 2 Johns. Chy.*, Chancellor Kent reviews many of the English decisions, and fully recognizes the rule, that in all such cases the mistake must be clearly and fully proven."

There was no evidence that the notes were not written as intended by the parties, or that they fail to express the real agreement between the parties made before their execution. It is, however, in evidence that there was a mistake as to their legal effect.

It is said in *Kerr on Fraud and Mistake, page 428:*

"Though the court will rectify an instrument which fails through some mistake of the draughtsman in point of law to carry out the real agreement between the parties, it is not sufficient to create an equity for rectification that there has been a mistake as to the legal construction, or the legal consequences of an instrument. The proper question always is, not what the document was intended to mean, or how it was intended to operate, but what it was intended to be. For example, where an annuity has been sold by the plaintiff, and was intended to be redeemable, but it was agreed that a clause of redemption should not be inserted in the deed, because the parties erroneously supposed that its insertion would make the transaction usurious, it was held that the omission could not be supplied in equity, for the court was not asked to make the deed what the parties intended, but to make it that which they did not intend, but which they would have intended

had they been better informed. So, also, where a party making a voluntary deed supposes that he will have a power of subsequent revocation, though no such power is reserved, the deed cannot afterwards be rectified by inserting the power; the evidence merely showing that the power had been omitted under the erroneous belief that it was not necessary to insert it, not that the power was intended to be inserted, but was left out by mistake."

In *2 Pomeroy's Equity Jurisprudence, section 843*, it is said: ".The rule is well settled that a simple mistake by a party as to the legal effect of an agreement which he executes, or as to the legal results of an act which he performs, is no ground for either defensive or offensive relief. If there were no elements of fraud, concealment, misrepresntation, undue influence, violation of confidence reposed, or of other inequitable conduct in the transaction, the party who knows, or had an opportunity to know, the contents of an agreement or other instrument, cannot defeat its performance, or obtain its cancellation or reformation, because he mistook the legal meaning and effect of the whole, or of any of its provisions. Where the parties with knowledge of the facts, and without any inequitable incidents, have made an agreement, or other instrument, as they intended it should be, and the writing expresses the transaction as it was understood and designed to be made, then the above rule uniformly applies; equity will not allow a defense, or grant a reformation or rescision, although · one of the parties, and—as many of the cases hold—both of · them, may have mistaken or misconceived its legal meaning, scope, and effect. The principle underlying this rule is that equity will not interfere for the purpose of carrying out an intention which the parties did not have when they entered into a transaction, but which they might, or even would, have had if they had been more correctly informed as to the law;

Rector v. Collins et al.

if they had not been mistaken as to the legal scope and effect of their transaction."

There was no error in the refusal of the court to reform the notes.

*Second*—In ascertaining the indebtedness of Collins to plaintiff, the court below credited Collins with the sum of $6,004.05, as so much interest paid by him, after the maturity of the notes, in excess of 6 per cent. We find no evidence on which this action of the court can be based.

The obligation given for the first installment was paid at maturity, and there is no controversy about it. Collins executed his two promissory notes for the other two installments and residue of the purchase money, each dated the 1st day of January, 1867, and maturing, the one at one year, and the other two years after date.

On examination of the two notes and the indorsement of the partial payments thereon, and of five annual statements, introduced in evidence by Collins himself, showing partial payments and the computation of interest, it distinctly appears that interest was computed on both notes at the rate of 10 per cent. per annum, after as well as before maturity, up to the 1st day of January, 1874, and was paid by Collins; and that on the 29th day of January, 1870, a credit of $2,112 was indorsed on the note last maturing, being for interest due on it at 10 per cent. per annum, up to the first day of Januuary, 1870, for which amount, together with the balance due on the note first maturing, amounting in the aggregate to $3,571.94, a new note at one day after date was executed by Collins, and the note first maturing taken up; leaving the new note for $3,571.94, and the note of $7,040, last maturing, subject to the credit indorsed thereon, as representing the entire balance of the purchase money due on the 29th day of January, 1870. From this time forward partial payments and

12–46

Rector v. Collins et al.

the computation and payment of interest at 10 per cent. per annum were continued to be made annually, to the 1st day of January, 1874, showing a total balance then due of $10,853.04, consisting of the principal of the remaining note for $7,040, the balance due on the note of $3,571.94, and the amount due on another separate note of $960, theretofore executed for accrued interest; and thereupon, the two small notes of $3,571.94 and $960 were taken up; and for the aggregate amount due thereon the note of $3,813.04, at one day after date, with interest at 10 per cent. from the 1st day of January, 1874, until paid, was executed; which last mentioned note, with the original purchase note of $7,040, and the interest thereon from the 1st day of January, 1874, constituted the amount of an account stated by and between Collins and Rector on the 6th of April 1876. The court below found that such an account was stated by and between Rector and Collins on the 6th day of April, 1876, and that it was thereby ascertained that Collins was indebted to Rector in the sum of $10,853.04, and the interest thereon from the 1st day of January, 1874, on account of these notes. It accordingly charged Collins with the $10,853.04 as of the 1st day of January, 1874, and credited him with the $6,004.05 excessive interest, as of the same date, which is an amount considerably more than Collins paid on interest, after the maturity of the original purchase notes, in excess of 6 per cent.

Was Collins entitled to any credit for any amount paid on interest, after the maturity of the original notes, in excess of 6 per cent? Appellant insists he is not.

In *Bank of U. S. v. Daniels, 12 Pet., 32,* Mr. Justice Catron, in delivering the opinion of the court, said : " That mere mistakes of law are not remediable, is well established, as was declared in *Hunt v. Rousmanius, 1 Pet., 1;* and we can only repeat what was then said, that whatever excep-

tions there may be to the rule, they will be found few in number, and to have something peculiar in their character, and to involve other elements of decision. What is this case, and does it turn upon any peculiarity? .Griffin sold a bill to the United States Bank, at Lexington, for $10,000, indorsed by three of the complainants, and accepted by the other, payable at New Orleans; the acceptor, J. D., was present in Kentucky, when the bill was made, and there accepted it; at maturity it was protested for non-payment and returned. The debtors applied to take it up, when the creditors claimed 10 per cent. damages, by force of the statute of Kentucky. All the parties bound to pay the bill were perfectly aware of the facts; at least the principals, who transacted the business, had the statute before them, or were familiar with it, as we must presume; they and the bank earnestly believing (as in all probability most others believed at the time) that the 10 per cent. damages were due by force of the statute, and influenced by this opinion of the law, the $8,000 note was executed, including the $1,000 claimed for damages. Such is the case stated and supposed to exist by the complainants, stripped of all other considerations standing in the way of relief. Testing the case by the principle that a mistake or ignorance of the law forms no ground of relief from contracts fairly entered into, with a full knowledge of the facts; and under circumstances repelling all presumption of fraud, imposition or undue advantage having been taken of the party, none of which are chargeable upon the appellants in this case, and the question then is, were the complainants entitled to relief? To which we respond decidedly in the negative."

In *Samyn v. Phillips, 15 Ohio, 218,* where, under a statute of Ohio which provided that parties might stipulate in writing for interest at any rate not exceeding 10 per cent. yearly, and in case no special rate was stipulated, interest

at the rate of 6 per cent. per annum should be allowed, a promissory note was executed which contained no stipulation as to interest, and a part of the interest thereon had been paid at the rate of 10 per cent. per annum: Held, that although in a suit upon the note, payment of so much of the interest as remained unpaid, could not be enforced at a higher rate than 6 per cent., yet, the interest which had been paid at the rate of 10 per cent., was not in excess, because it was at a rate for which the parties might have lawfully contracted under the statute, *and should be allowed to stand without deduction.* The court said: "In the case before us, there is no evidence of any contract for the payment of interest at a special rate, after the maturity of the debt, except the fact that such payments were, from time to time, made. Though such payments could not have been enforced for want of a contract evidenced as the statute required, yet so long as it was in the power of the parties to make such a contract valid, by express written stipulation, it was equally in their power to make it valid by actual execution. In our judgment, therefore, the payments of interest made while the 10 per cent. law remained in force, were not in excess of the rate allowed by law at the time, and should have been allowed to stand, without deduction; and to this extent the judgment of the court below will be modified."

It was not proven that Collins paid any interest under a mistake of fact, or that he was induced by fraud practiced upon him to do so. He is not entitled to any credit for excessive interest.

*Third*—The court below held that the payments made by Collins after the 6th of April, 1876, should be appropriated to the satisfaction of the note for $3,813.04 so far as they will extend. This was error; for this note was deposited, under an agreement between Rector and Collins,

by Rector with McPhetridge, to secure a debt contracted by Collins, and was so deposited at the times these payments were made. Rector had no right, if he had desired, to credit Collins with them on the $3,813.04 note. They could only have been considered as part payments of the note for $7,040.

The decree of the court below is reversed, in so far as it is inconsistent with this opinion, and in other respects is affirmed; and this cause is remanded with instructions to the court below to render judgment in favor of appellant against James M. Collins for $1,925.59, and 6 per cent. per annum interest thereon from the 10th day of February, 1881, the amount due on the note for $7,040, less any rents collected by appellant for lands described in her complaint for years subsequent to 1881, and for the further sum of $3,813.04 and 10 per centum per annum interest thereon from the first day of January, 1874, till paid, less so much of the rent collected for years subsequent to 1881, as may be in the hands of appellant after the appropriation thereof as herein directed, if any; and by proper decrees and orders cause said lands to be sold and the proceeds of the sale thereof appropriated to the payment of the judgment to be rendered herein in favor of appellant against Collins, so far as the same will extend; and to adjust the costs incurred in the court below in such manner as the court, in the exercise of its discretion, may deem equitable.