COLONIAL & UNITED STATES MORTGAGE COMPANY v. JETER.

Opinion delivered January 17, 1903.

CONTRACT—MISTAKE.—One who signed a contract after opportunity to examine it cannot be heard to say that when he signed it he did not know what it contained.

Appeal from Chicot Circuit Court.

ZACHARIAH T. WOOD, Judge.

Reversed.

*Harry E. Cook* and *Norton & Prewett,* for appellant.

A contractor must stand by the words of his contract. 91 U. S. 50. One who has been imposed upon by a contract must act promptly to rescind it. 93 U. S. 55. Fraud that can be set up in law must be fraud in the execution of the instrument. 33 S. W. 23; 61 Fed. 54; 31 S. W. 962; 19 How. 211; 5 Notes, U. S. Rep. 679.

*Baldy Vinson,* for appellee.

The appellee was a vendee in possession. 8 Ark. 272; 19 Ark. 23; 42 Ark. 246; 48 Ark. 535. The consideration for Jeter's notes was a sale or lease. 1 Ark. 224; 11 Ark. 239; 15 Ark. 275; 18 Ark. 65; 54 Ark. 6; 20 Ark. 216; 26 Ark. 449. The true consideration can be shown at any time. 54 Ark. 195; 55 Ark. 112; 45 Ark. 447; 48 Ark. 413; 56 Ark. 670. Appellee has the right to stand on his purchase. 47 Ark. 148; 13 Ark. 593. Fraud is established by oral evidence. 38 Ark. 334; 46 Ark. 122; 48 Ark. 169; 24 Ark. 222; 13 Ark. 593; 39 Ark. 560; 54 Ark. 16; 17 Ark. 71, 498.

BATTLE, J. The Colonial & United States Mortgage Company brought this action against Garland Jeter on a note executed by him for the rent of lands, and sued out an order of attachment against the crops raised on the lands during the year they were

rented for the purpose of enforcing and foreclosing a landlord's lien thereon. The defendant answered, and admitted the execution of the note, but denied that it was given for rent. He denied that he rented the lands, but, on the contrary, averred that he purchased them, and executed the note sued on, in part, for the purchase money, and said: "If the evidence of such contract furnished this defendant by plaintiff is construed to mean a rental contract, then defendant avers that plaintiff has practiced a fraud upon him, in this, that he stated to defendant that the evidence so furnished him was a bond for title or a certificate of purchase in its effect, both as a matter of law and a matter of fact, and this defendant will be grossly misled to his prejudice."

The jury in the case returned a verdict in favor of the defendant, and the court rendered judgment accordingly, and the plaintiff appealed.

In the trial appellant adduced, as evidence, a written contract by which it leased to the appellee certain lands from July 1, 1897, to November 1, 1900, and the appellee agreed to pay therefor certain sums of money on the first day of November in the years 1897, 1898, 1899 and 1900, for which sums three several notes were executed by him to appellants, and by which they further agreed that if the appellee "shall have paid the rent notes above mentioned, together with any additional sums" provided for in the lease "as rent and attorney's fees that said lessor may have to pay for collecting said notes after their maturity, then said lessee (the appellee) shall have, for the period betwen November 1, 1900, and January, 1901, the option to purchase said lands for the sum of $1,000," to be paid in certain annual installments on the first day of November in the years 1901, 1902, 1903, 1904 and 1905. The appellant then read as evidence one of the notes mentioned in the lease, which was given for the rent of said lands for the year 1899, for the sum of $312, it being the note sued on in this action. The crops attached was raised on the land leased, and in the year 1899.

The appellee, Garland Jeter, in his own behalf testified as follows: "My name is Garland Jeter. I am the defendant in this cause. In the spring of 1897 I made a contract with Mr. Hornor for the rent of the property involved for $100 per year, and I was to make all necessary improvements. I put a fence around the property. There are about 95 acres in the tract. The place was in a bad condition at that time, and $100 was a good rent for same.

About the first of July, 1897, a Mr. Williamson from Memphis came to see me about the place. He said that he was agent for the plaintiff, and asked me did I not want to buy the place. He said. that I could get it for $1,000, to be paid in five years; the notes to be for $200 each, with interest. After some further conversation, I told him that I would take the property, and he said that he would send me the papers after he returned to Memphis. In about a week I received the papers. One was a contract, and there were four notes. The contract filed above is an exact copy of the one signed by me, and the note sued on is signed by me. It expresses on its face that it is for rent, but I thought that the contract between Mr. Williamson and myself was for the purchase of the property. I do not remember whether I read the contract and notes or not. I took all the papers to the law office of Mr. R. M. Gaines, and showed him the papers. He told me that they were all right, and I signed them, and returned them to Memphis. Mr. Williamson was not present when I signed the papers, nor was the representative of the plaintiff. I paid the first note maturing in 1897, amounting to $240. I have made no payment since. Neither the plaintiff nor any of its agents made any further representations to me about the property, except the statement detailed above made by Mr. Williamson that he would sell me the property for one thousand dollars. When I signed the notes, I thought they were purchase money notes. I can read and write, but I do not know whether I read the notes and contract sued on or not. I think I had the papers three or four days before I returned them. I took them out home, and brought them to Lake Village before I mailed them to Memphis. Mr. Hornor, as agent for the plaintiff, has demanded the payment of these notes. I removed the cotton attached in this cause without the consent of the plaintiff. I do not think that there was any lien on it. I was going to ship the cotton to Greenville, Miss." To all of witness' testimony relative to verbal contract made with Williamson appellant at the time excepted, and asked that its exceptions be noted of record.

Also R. M. Gaines, who testified as follows; "My name is R. M. Gaines. I was formerly in the law business; have since retired from the practice. In the year 1898 Mr. Jeter brought some papers to my office, and said that he had bought the property involved in this action for one thousand dollars, and stated to me that he would have five years in which to pay for it. I told him

that I would consider that a good trade. I do not believe that I read the papers at all." Appellant at the time excepted to witness testifying to statements made to him by appellee.

So much of the testimony of Jeter and Gaines as was objected to by the appellant was incompetent. The contract entered into by appellant and appellee is in writing, and it cannot be added to, changed, or set aside by any such testimony. It did not show that the execution of the contract was procured by fraud, such as misreading, surreptitious substitution of one paper for another, or by some other trick or device; and was inadmissible to prove fraud. *McIlroy* v. *Buckner,* 35 Ark. 555, 559; *St. Louis, I. M. & S. Ry. Co.* v. *Weakly,* 50 Ark. 397, 406; *George* v. *Tate,* 102 U. S. 564.

It did not show that any one misrepresented to him its contents. But it does show that the contract was sent to him by mail, to be returned in like manner when he executed it; and that he had the opportunity to examine it at his leisure, and as thoroughly as he wished. He took it home with him, and kept it there three or four days. He then took it to his lawyer, and consulted him about it, and then signed it and the notes, and returned them by mail. He can read and write, and was without a reasonable excuse for failing to read and understand them.

As said by the Supreme Court of the United States in *Upton* v. *Tribilcock,* 91 U. S. 50: "It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission."

Reversed and remanded for a new trial.