## CARTER v. GOODSON.

## Opinion delivered June 22, 1914.

1. EVIDENCE—TITLE TO LAND—TITLE FROM STATE—POSSESSION—PRESUMP-
   TION.—Where appellee and her grantors have held possession of
   land for fifty years, improving the same and paying taxes thereon,
   under the evidence, held, a finding by the court that a grant of the
   land had been made by the State to appellee's grantor, was justified.

2. TITLE—GRANT—POSSESSION—PRESUMPTION.—The presumption of a
   grant from long continued possession is one of fact, and it is for
   the jury or court trying the case to determine the effect of the
   evidence in support of the presumption.

Appeal from Yell Circuit Court, Dardanelle District;
*Hugh Basham,* Judge; affirmed.

### STATEMENT BY THE COURT.

This is an action of ejectment by E. L. Carter against
A. L. Goodson, Jacob Goodson and Mrs. Laura West, to
recover the possession of the northwest quarter of the
northeast quarter of section 6, township 4 north, range
20 west, 47.41 acres of land, in Yell County, Arkansas.
The facts are as follows:

The land in controversy was originally swamp land,
and a patent therefor was executed by the United States
to the State of Arkansas. The plaintiff, Carter, pur-
chased the land from the Commissioner of State Lands
and obtained a deed from the State for the land on Sep-
tember 27, 1911.

Richard Ellison, for the defendants, testified: I knew
Eppy White in 1856, and he lived on the land in contro-
versy. In 1857 White sold the land to one Jeffreys, and
Jeffreys then moved on it. At that time there was a
house and some improvements on the land. The house
remained there until it was destroyed during the latter
part of the Civil War. After the war Jeffreys sold the
land to my father, John J. Ellison, but father never
moved on the land. At the time Jeffreys sold the land
to my father, he sold another tract, containing forty
acres. When my sister, Laura West, married, my father
gave the land to her, and she and her husband moved on
it and have resided there ever since. Neither my father,

my sister, nor her husband could read or write. My
father and my sister together have paid the taxes on
the land since the Civil War. I was accustomed to look-
ing over my father's papers for him, and my recollection
is at one time I saw a patent from the State of Arkansas
to Eppy White for the land in controversy. I also saw
a deed from White to Jeffreys, and my recollection is
the deed called for both the northwest quarter of the
northeast quarter and the northeast quarter of the north-
east quarter of section 6, township 4 north, range 20 west.
Jeffreys conveyed both of these tracts of land to my
father. None of these deeds were ever recorded, and
they were in possession of my father or sister when I
last saw them.

The defendant, Laura West, testified that her father
gave her the land when she married, in 1866, and that
she has lived on it and cultivated it ever since. She
testified that she recollects seeing deeds which were de-
livered to her as deeds to the land in controversy; that
she can not now find the deeds; that her husband at one
time assorted out some papers in his trunk and burned
some of them; that this is the only way she can account
for the absence of the deed now.

Other witnesses for the defendants testified that
Mrs. Laura West had resided on the land since her father
gave it to her until the present time.

Eppy White, Jeffreys, John J. Ellison, and the hus-
band of Laura West were all dead when this action was
commenced. It was also shown that there was in the
county clerk's office a record book containing a certificate
from the State Auditor of lands, dated November 24,
1868, showing that the northwest quarter of the north-
east quarter of section 6, township 4 north, range 20 west,
47.40 acres, was entered by Eppy White and was subject
to taxation.

On the part of the plaintiff, the Commissioner of
State Lands testified that the records in his office showed
that there was an application by Eppy White, numbered
41, and dated August 13, 1857, for the purchase from the

State of the northeast quarter of the northeast quarter of section 6, township 4 north, range 20 west, and also that the records of his office show that a patent was issued to him for said land, and that both in the application and the record showing the sale of the land, the number of acres was described as 47.41 acres. He also stated that the original plat book was still in the land office and that the northwest quarter of the northeast quarter of section 6, township 4 north, range 20 west, the land in controversy, is marked "S;" that the practice was, when a subdivision of lands was sold by the State, to place the letter "S" on the subdivision sold; that in his judgment the placing of the letter "S" on the northwest quarter of the northeast quarter of the section in question was a clerical error because the records of the land office contained no other evidence of the sale of the land to any one except the sale made to Carter in 1911. He also stated that the records in the State Land Office showed that the northeast quarter of the northeast quarter of section 6, township 4 north, range 20 west, was purchased by Oscar Winn on December 15, 1904, and that a refunding certificate was issued to Winn for said land on September 22, 1911. Other evidence shows that suit was commenced by him for the possession of the land so purchased by him against Mrs. Laura West and that the suit was settled by compromise between the parties.

The case was tried before the court sitting without a jury, and judgment was rendered in favor of the defendants. Plaintiff has appealed.

*Samuel Frauenthal* and *John B. Crownover,* for appellant.

1. Any presumption that could possibly arise by reason of possession is entirely overcome by record proof in State Land Office.

2. The statute of limitation by adverse possession would not run against the grantee of the State until after 1911.

3.   Upon loss of the deed, the highest secondary evidence was the original certificate of purchase, application to enter and the record of the deed in the land office. 76 Ark. 400; 2 Wigmore on Ev. 1239, and notes, pp. 1484-8.   But there is no testimony that a deed ever issued to Eppy White.   4 Ark. 574.

4.   The patent to appellant was an official act, and the law presumes it was rightfully and duly performed. 31 Ark. 609; 39 *Id.* 121; 94 *Id.* 221.

5.   The statute of limitations does not run against the State nor its grantee.   No length of time or possession gives title against the State.   95 Ark. 70; Coke, Litt. 57; 3 Cruise, 558; 115 U. S. 408; 92 *Id.* 343; 95 Ark. 70; 132 U. S. 239; 22 S. E. 997; 22 So. 542; 72 S. W. 443; 1 Alaska, 81; 21 Mich. 24; 46 Cal. 661; 27 Am. Dec. 661; 50 Mich. 367; 7 Ga. 387.

*Priddy & Chambers* and *J. F. Sellers,* for appellee.

1.   The bill of exceptions does not show it contains all the evidence.   81 Ark. 427; 75 *Id.* 82; 74 *Id.* 553.

2.   After long, undisputed actual possession a grant will be presumed.   81 A. 997; 233 Pa. 121; 141 S. W. 574; 66 Atl. 362; 117 S. W. 307; 33 Am. Dec. 720; 27 S. W. 409; 15 N. H. 344; 39 Am. Dec. 658; 2 Sneed (Tenn.) 215; 205 W. 152; 1 Greenl. Ev. (16 ed.), § 45-a; 90 Fed. 187; 138 Fed. 772; 23 So. 79; 53 N. E. 1008; 2 Chamberlain on Ev., § 1163-a; 161 S. W. 64; 120 U. S. 534; 52 S. W. 123; 50 Ark. 155.

3.   There is testimony to prove an *actual* grant.

*Samuel Frauenthal* and *J. B. Crownover,* in reply.

The bill of exceptions is sufficient if it appears therein that *all* the evidence is brought up.   105 Ark. 53; 92 *Id.* 148; 49 *Id.* 364; 36 *Id.* 496.   See 81 Ark. 327; 75 *Id.* 82.

HART, J., (after stating the facts).   Counsel for defendant seek to uphold the judgment upon the doctrine of the presumption of a grant after a long lapse of time. In discussing this question, in the case of *Fletcher* v. *Fuller,* 120 U. S. 534, at page 545, Mr. Justice Fields, speaking for the court, said:

"When possession and use are long continued they create a presumption of lawful origin; that is, that they are founded upon such instruments and proceedings as in law would pass the right to the possession and use of the property. It may be, in point of fact, that permission to occupy and use was given orally, or upon a contract of sale, with promise of a future conveyance, which parties have subsequently neglected to obtain, or the conveyance executed may not have been acknowledged, so as to be recorded, or may have been mislaid or lost. Many circumstances may prevent the execution of a deed of conveyance, to which the occupant of the land is entitled, or may lead to its loss after being executed."

Again, at page 551 the learned judge said:

"The general statement of the doctrine, as we have seen from the authorities cited, is that the presumption of a grant is indulged merely to quiet a long possession which might otherwise be disturbed by reason of the inability of the possessor to produce the muniments of title, which were actually given at the time of the acquisition of the property by him or those under whom he claims, but have been lost, or which he or they were entitled to have at that time, but had neglected to obtain, and of which the witnesses have passed away, or their recollection of the transaction has become dimmed and imperfect. And hence, as a general rule, it is only where the possession has been actual, open and exclusive for the period prescribed by the statute of limitations to bar an action for the recovery of land, that the presumption of a deed can be invoked. But the reason for attaching such weight to a possession of this character is the notoriety it gives to the claim of the occupant; and, in countries where land is generally occupied or cultivated, it is the most effective mode of asserting ownership."

In *United States* v. *Chaves,* 159 U. S. 452, Mr. Justice Shiras, after discussing the question of fact as to whether or not the evidence was sufficient to show affirmatively that the claimant obtained title from the Mexican

Government, said, in reference to the power of the court to presume a grant upon proof of long continued possession, the following:

"It is scarcely necessary for us to consider such a question, because, as we have seen, there is ample evidence from which to find that these settlers were put in juridical possession under a grant from the Governor of New Mexico, who, under the laws then in force, had authority to make the grant. However, we do not wish to be understood as undervaluing the fact of a possession so long and uninterrupted as disclosed in this case. Without going at length into the subject, it may be safely said that by the weight of authority, as well as the preponderance of opinion, it is the general rule of American law that a grant will be presumed upon proof of an adverse, exclusive and uninterrupted possession for twenty years, and that such rule will be applied as a *presumptio juris et de jure,* wherever, by possibility, a right may be acquired in any manner known to the law. 1 Greenleaf, Ev. (12 ed.), § 17; *Ricard* v. *Williams,* 7 Wheat. 59, 109; *Coolidge* v. *Learned,* 8 Pick. 503.

"Nothing, it is true, can be claimed by prescription which owes its origin to, and can only be had by, matter of record; but lapse of time accompanied by acts done, or other circumstances, may warrant the jury in presuming a grant or title by record. Thus, also, though lapse of time does not, of itself, furnish a conclusive bar to the title of the sovereign, agreeable to the maxim, *nullum tempus occurrit regi;* yet, if the adverse claim could have a legal commencement, juries are advised or instructed to presume such commencement, after many years of uninterrupted possession or enjoyment. Accordingly, royal grants have been thus found by the jury, after an indefinitely long continued peaceful enjoyment, accompanied by the usual acts of ownership. 1 Greenl. Ev., § 45."

(1) The presumption of a grant from long continued possession is one of fact, and it is for the jury or court

trying the case to determine the effect of the evidence in support of the presumption.

(2) It is contended by counsel for plaintiff that the records of the State Land Office conclusively show, as a matter of law, that no deed could have ever been issued by the State to Eppy White; but we do not agree with them in this contention. It was admitted by the Commissioner of State Lands that there was some confusion from the records in his office as to whether the entry by Eppy White was for the northwest quarter of the northeast quarter or the northeast quarter of the northeast quarter. It is true, he states that in his opinion the letter "S" was placed on the northwest quarter of the northeast quarter by mistake and should have been placed on the northeast quarter of the northeast quarter. He gave his opinion that this was a mere clerical error, because there was no other record in the land office tending to show that Eppy White had entered the land in controversy; that on the other hand there was a record in the land office showing that Eppy White had made application to purchase the northeast quarter of the northeast quarter and that the same had been sold to him. He admits, however, that it was the practice in the land office to place the letter "S" on the original plat on the subdivision of land when it was sold by the State, and that pursuant to this custom the letter "S" was placed on the northwest quarter of the northeast quarter. He also admits that by reason of this confusion of the records one of the clerks in his office sold the northeast quarter of the northeast quarter of said section 6 to Oscar Winn. Then, too, the Auditor of State Lands, pursuant to statute, certified to the county clerk of Yell County, in which the lands were situated, that the northwest quarter of the northeast quarter, or the land in controversy, had been sold to Eppy White and was subject to taxation. The date of this certificate is 1868. Therefore, we are of the opinion that the circuit court might reasonably have inferred that the record of the State Land Office did not show, as a matter of law, that the land in controversy

had not been sold to Eppy White. When we consider the further fact that the land has been in possesison of Eppy White and his grantees ever since the year 1857, and that these parties have cleared the land, made improvements on it, cultivated it, and paid taxes on it, we think the circuit court was justified in finding that a grant had been made to Eppy White. In addition to this, Richard Ellison testified that he had seen, among the papers of his father, a deed to this land from the State to Eppy White. Eppy White and his grantees have been in the exclusive and uninterrupted possession of the land for over half a century, and they are all, except the defendant, Laura West, now dead. She was too young to remember anything about the original entry; and when all the facts and circumstances adduced in evidence are considered, we are of the opinion that the court was justified in finding that a grant of the land had been made by the State.

It follows that the judgment must be affirmed.