CARTER v. STEWART.

Opinion delivered June 13, 1921.

1. ADVERSE POSSESSION — PRESUMPTION OF GRANT.—Uninterrupted possession for fifty years of land originally belonging to the State, with payment of taxes during the entire period, is sufficient to sustain a presumption of fact that the State made a grant of the land.

2. ADVERSE POSSESSION—PRESUMPTION OF GRANT—SILENCE OF STATE RECORDS.—The fact that the State's land records do not show that any grant was ever made of the tract in controversy is merely negative evidence, and does not overcome the presumption of a grant from fifty years' uninterrupted possession of the land and payment of all taxes thereon during that period.

3. ADVERSE POSSESSION—PASTURING CATTLE AND CUTTING TIMBER.— Where defendants and their privies had been in actual possession

of a 40-acre tract of land adjoining the forty acres in contro-
versy, claiming the entire 80-acre tract as their homestead,
though all of the improvements were on the 40-acre tract not
in controversy, the continuous use of the disputed tract, which
was swamp land, for cutting firewood and for pasturing cattle
is actual possession of the tract in controversy.

4. ADVERSE POSSESSION — CONSTRUCTIVE POSSESSION.—Where the
grantee under a deed by one without record title goes into actual
possession of part of the land described in the deed, his possession
gives him constructive possession of the remainder.

5. ADVERSE POSSESSION—CONSTRUCTIVE POSSESSION—EXCEPTION.—The
exception to the rule that possession of a parcel of land under a
deed conveying an additional tract is constructive possession of
the latter tract, namely, where the deed covers separate tracts
owned by different owners, is limited to cases where the different
owners are different private individuals, and does not apply
where the legal title to the additional tract was in the State, the
source of title to both tracts.

6. ADVERSE POSSESSION—PRESUMPTION OF GRANT.—The presumption
of fact of a State grant arising from long-continued possession of
land and payment of taxes assessed thereon is not in conflict with
the rule that the State is not estopped by the unauthorized act of
its tax officer in listing the land for taxation, since the State can,
by rebutting the presumption, recover the land, regardless of
such unauthorized act.

Appeal from Phillips Chancery Court; *A. L. Hutch-
ins,* Chancellor; affirmed.

STATEMENT OF FACTS.

Edna W. Carter instituted an action of ejectment in
the circuit court against Oscar Stewart and Mary Jeter
Stewart to recover 40 acres of land situated in Phillips
County, Arkansas. She alleged that the land was
granted by the United States to the State of Arkansas on
August 14, 1858, under an act of Congress commonly
known as the Swamp Land Grant. She further alleged
that she obtained a patent to said land from the Commis-
sioner of State Lands on the 6th day of June, 1917, and
under it she has title to said lands and is entitled to the
possession of the same.

The defendants asserted title to the land in themselves and moved to transfer the case to equity, which was done.

On the 26th day of April, 1873, S. D. Thomas conveyed by warranty deed to Benjamin Jeter, 80 acres of land in Phillips County, Arkansas. The deed conveyed the 40 acres in controversy and another 40-acre tract adjoining it. The deed of S. D. Thomas and wife to Benjamin Jeter is dated April 26, 1873, and was acknowledged on the same day. It was duly filed for record in the clerk's office on the 1st day of August, 1873. The consideration recited in the deed is the sum of $600, the receipt of which is acknowledged.

J. R. Fielder was a witness for the defendants. According to his testimony, S. D. Thomas was his stepfather. He did not know how Thomas acquired title to the land in question, but stated that he was satisfied he thought he had a title to it, or he would never have executed a deed to Jeter to the land. The land was then situated in Monroe County, and some years ago many of the deed records of that county for that time were burned in a fire. The defendants are both negroes and are husband and wife. Gertha Jeter Stewart is the daughter of Ben Jeter. Ben Jeter lived on the land and paid the taxes on it until he died. Since that time Gertha Jeter Stewart has lived on the land and paid the taxes on it. Witness helped Thomas to clear some of the land about three years before he sold it to Jeter. Mr. Thomas is now dead, and witness does not know where his old land papers are. Thomas commenced clearing the place for a home. Between 25 and 30 acres are now cleared, but the cleared land is not on the tract in controversy.

According to the testimony of Gertha Jeter Stewart, she was the only heir at law of her father. Her father commenced to pay taxes on the land in 1874 and paid taxes continually until he died. She was residing with her father when he died and continued to reside on the land with her mother until she died in 1912. They continued to pay taxes on the land until 1912. Since that

time the witness has paid the taxes on the land.  In other words, the Jeters have paid the taxes on the land since they bought it down to the time the case was heard in the chancery court on September 25, 1920.  The cleared land and the dwelling house is on the 40-acre tract adjoining the 40 acres in controversy.  The Jeters built a six-room house and cleared and cultivated between 25 and 30 acres of land on the 40 acres adjoining the 40 acres in controversy.  Since they obtained the deed from Thomas, they have regarded the 80-acre tract embraced in the deed as their homestead.  They have continuously cut firewood from the 40 acres in controversy and have used it for a pasture.   It is low, swampy ground, and none of it has been put into cultivation.  The Jeters have been cutting timber ever since they have been on the land, and they have cut off all the oak and hickory timber, so that there is no timber on the land except some gum timber.   The record shows that Gertha Jeter Stewart is 59 years old, and that she is erroneously sued as Mary Jeter Stewart; J. R. Fielder is somewhat older.

A clerk in the State land office testified that he had examined the records kept in the State land office carefully, and that the records do not show any conveyance of the land to any one prior to the deed that was made to Edna W. Carter on June 6, 1917.  The original patent of the United States to the State of Arkansas for said lands is shown by the records of the State land office.  It is dated August 14, 1858.

The chancellor found the issues in favor of the defendants, and a decree was entered of record dismissing the complaint of the plaintiff for want of equity.  To reverse that decree, the plaintiff has duly prosecuted this appeal.

*A. D. Whitehead* and *E. L. Carter,* for appellant.

The testimony shows that the land was wild, unoccupied and unimproved.  There never has been any adverse actual possession, and the only use it was put to is cutting timber and wood.  Cutting timber and gathering wood from wild land does not constitute actual or ad-

verse possession, neither does the payment of taxes. 81 Ark. 258; 68 *Id.* 551. The case of *Carter* v. *Goodson,* 114 Ark. 62, is not a similar case on the facts. Grants in the country are not presumed from the government, except in cases of very ancient possession, running back to colonial days.

The records of the State Land Office clearly show that the land had been patented by the United States to the State of Arkansas and by the State to appellant in 1917. But the rule that a person who takes possession of a part of a tract under cover of title thereby obtains possession of the entire tract is subject to one important exception which applies in this case. An adjoining tract was sold by the sheriff and tax deed issued to S. D. Thomas in November, 1869. Defendant's possession of the southeast quarter could not be construed to extend to the southwest quarter of the southeast quarter of section 30. 83 Ark. 377; 98 *Id.* 367; 81 *Id.* 141; 104 S. W. 191.

Defendant had never improved the land, nor put any of it in cultivation, nor fenced any of it. Their sole claim is based on the payment of taxes, but for those they may be reimbursed under Kirby's Digest, §§ 7180-1. The State is responsible for the unauthorized acts of its officers in putting these lands on the tax books and collecting taxes thereon. Nor can laches be imputed to the State, and the statutes of limitation do not run against her. 115 U. S. 408; 95 Ark. 70. The land belonged to the State from the time of swamp land grant in 1858 until June, 1917, when it was conveyed to appellant, and the decree was erroneous and should be reversed.

*R. B. Campbell* and *W. H. Pemberton,* for appellees.

After fifty years' possession of the land, peaceable and uninterrupted, and clearing it and making improvements and payment of taxes, a grant from the State will be presumed. 114 Ark. 62; 135 *Id.* 232, 353-369.

HART, J. (after stating the facts). The principal question raised by the appeal in this case is whether fifty years' peaceable and uninterrupted possession of the land in controversy in the defendants and those under whom they claim, together with the payment of taxes during all that time, affords sufficient ground to presume a grant from the State to the lands in question. The chancellor held under the facts and circumstances adduced in evidence that he had the right to presume and find that a patent had been formerly issued by the State to the land in question under the authority of *Carter* v. *Goodson,* 114 Ark. 62, and *State* v. *Taylor,* 135 Ark. 232. See, also, *Wallace* v. *Hill,* 135 Ark. 353.

In the case of *Carter* v. *Goodson, supra,* the court held that where appellee and her grantors had held possession of land for fifty years, improving the same and paying taxes thereon, a finding by the court that a grant of the land had been made by the State to appellee's grantors was justified. The court further held that the presumption of a grant from continued and uninterrupted possession is one of fact for the court or jury trying the case.

It is claimed that the facts in the case at bar do not bring it within the principles decided in that case. It is pointed out by counsel that the notations or marks on the State land records in that case tended to show that the land had been sold by the State, while no such inference can be drawn from the State land records in the present case. For instance, the letter "S" was written on the original plat in the land office, and it was shown that it was the practice to place the letter "S" there when the State had sold the land. The establishment of the fact or circumstance, however, was not controlling in that case. This is shown by the decision of the court and the authorities cited in the subsequent case of *State* v. *Taylor, supra.* In that case the court clearly recognized that where the possession of land has continued uninterrupted for a great length of time a presumption arises as against

the State and claimants under it that a grant from the State has duly accompanied the first possession and consequently avoids any subsequent patent. It was there settled that a patent to land in cases of peaceable and uninterrupted possession of many years, together with the payment of taxes, may be presumed to have been formerly issued. We there pointed out from the decisions of other States that the courts have been constantly in the habit of presuming grants from the State upon the uninterrupted and peaceable possession of the lands for many years. The presumption springs from a lapse of time, the probable loss of evidence and motives of public policy in settling titles and quieting possession.

Under its sovereign power, a State imposes the burden upon all its citizens to pay taxes on the property owned by them for the purpose of supporting the government. It is the duty of the officers of the State to place the land in the State on the tax books for that purpose as soon as the State has parted with its title to them. Hence where the State has for a long time demanded and collected taxes on property and the property owner has acquiesced therein by paying the taxes, there arises a presumption that there was a legal liability to pay the taxes, and this furnishes a strong circumstance from which a court may infer a grant from the State. Of course, from the very nature of the thing the person or persons paying the taxes must be in the uninterrupted and continued possession of the land in order to warrant the court in finding a grant from the State. In such cases the possession of the adverse claimants could have had a legal inception, and the doctrine of presumption of a grant from the State under such circumstances is recognized in many cases.

In such cases the fact of the claimant not producing the patent may have been owing to the general practice of the country at the time to take a conveyance of land without requiring all previous title deeds, or the failure to record deeds. Indeed, where a large grant of land from the State has been divided between the children of

the grantee, the original patent must remain in the hands of only one of them and might have been lost without the fault of the others.

The facts in the present case show that Thomas commenced to clear the 80 acres of land which he subsequently conveyed to Jeter in about 1870. According to the testimony of his son-in-law, he intended to make it his home. He conveyed the land to Jeter in 1873. At the time Thomas conveyed the land to Jeter, it was situated in Monroe County, but was subsequently annexed to Phillips County, where it is now situated. Thomas is dead, and the deed records of Monroe County for the year in which Thomas conveyed to Jeter have been burned. Jeter is also dead. He left surviving him his widow and one child, who continued to reside on the land until the widow died. The daughter then continued to reside on the land until the present time. The Jeters commenced to pay taxes on the land from the time Thomas executed the deed to Ben Jeter in 1873, until the case was heard in September, 1920, in the chancery court. Of course, if Thomas and Jeter had lived, or if the deed records in Monroe County had not been destroyed, evidence might have been produced to show a grant from the State to Thomas. The fact that the State land records do not show such a grant does not repel or overcome, as a matter of law, the presumption of a grant. Such omission may be regarded as negative testimony only.

But it is insisted that there has been no possession by the Jeters of the land in question. It is true that the house and cleared land are all on the adjoining 40 acres which was also embraced in the deed from Thomas to Ben Jeter, but the evidence shows that Thomas intended to have the whole 80 acres for his homestead, and that the Jeters did claim the whole 80 acres as their homestead. The evidence shows that the 40-acre tract in controversy is low, marshy land, and for that reason was not cleared and put into cultivation. During all these years, how-

ever, the Jeters have cut their firewood from it and have
used it to pasture their cattle.   In fact, they have cut
all the valuable oak and hickory timber off of it, and
there is no timber left on it now except a small quantity
of gum.    These acts were not of a fitful and disconnected
character, but they were continued and uninterrupted for
nearly 50 years.   Therefore, the chancellor was justified
in holding that they held such actual possession of the
40-acre tract in controversy as was practical under the
circumstances.

Moreover, it is well settled that where the grantee
under a deed by one without record title goes into actual
possession of part of the land described in the deed, his
possession gives him constructive possession of the re-
mainder.

It is claimed, however, that the facts in this case
bring it under the exception to that well known rule as
declared in *St. L., I. M. & S. Ry. Co.* v. *Moore,* 83 Ark.
377, and other cases of like character.   In that case the
court said that where one takes possession of one of two
adjoining tracts of land under a deed, conveying both
tracts to him, if the actual title to the two tracts are in
different persons, his actual possession of one tract will
not give him constructive possession of the other so as
to oust the owner of that tract.   The reason is that the
possession of one tract would be no notice to the owner
of the other tract that his land was claimed adversely.
The court said further that, if the law were otherwise,
one by buying a small tract and taking a deed conveying
adjacent unimproved lands, might, by taking possession
of the small tract, become constructively in the possession
of all of the land within the calls of his deed without any
visible act to notify the owners of such adverse claim.

In the application of the exception to the present
case, counsel point to the fact that the legal title to one
of the 40-acre tracts was in Thomas, and that the legal
title to the 40-acre tract in controversy was in the State,
at the time Thomas conveyed both tracts to Jeter.   Now
the State is the source of all land titles in this State, and

the general rule announced above would illy serve its purpose and would really be worth nothing, if the exception could be applied to cases like the present one. The exception to the rule is applied in cases where different individuals claim and hold the legal title to the lands. We hold that it has no application when the facts are like those in the present case.

Finally, it is again contended that the rule laid down overturns the well-settled rule that the State in its sovereign capacity is not estopped to assert a claim to its own property by the unauthorized acts of its officers. Hence it is claimed that the act of the officers in placing the land on the tax books was unauthorized, and the State is not estopped by such unauthorized act. That principle, however, has no place under the facts as disclosed by the record. If the plaintiff had introduced evidence tending to oppose or repel the presumption of a grant from the State arising from the peaceable and uninterrupted possession of the Jeters and Thomas under whom they claimed for over fifty years, then it could not be said that the State, or its subsequent grantee would be estopped from claiming title to the land by reason of the said officers placing the land on the tax books. But, as has already been pointed out, the plaintiff has introduced no testimony tending to rebut the presumption of a grant except the fact that the records of the State land office do not show such a grant. We have already seen that this does not, as a matter of law, overcome the presumption of a grant as found by the chancellor. Consequently, the estoppel of the State from the unauthorized acts of its officers does not arise in the case. If the findings of the chancellor was correct, the State had already granted the land to Thomas, and the land was rightfully placed on the tax books.

It is true, as said in *Oaksmith's Lessee* v. *Johnston*, 92 U. S. 343, that in this country there can be seldom occasion to invoke the doctrine of presumption of a grant from the Government or the State except in cases of ancient possessions. But it is equally true that, where the facts

justify it, this rule of presumption is a safe one and has a salutary effect; and the doctrine serves a reasonable and necessary purpose.

It follows that the decree must be affirmed.

McCulloch, C. J. (dissenting). There is nothing in this case to show that the defendants ever had possession, either actual or constructive, of the lands in controversy. Fitful acts of possession, such as cutting timber or grazing stock, do not constitute continuous actual possession so as to put the real owner on notice or to ripen into title by adverse possession. *Scott* v. *Mills,* 49 Ark. 266; *Driver* v. *Martin,* 68 Ark. 551; *Connerly* v. *Dickinson,* 81 Ark. 258; *Earle Improvement Co.* v. *Chatfield,* 81 Ark. 296. In the case last cited the court said: ''The disconnected acts of cutting timber would indicate oft-repeated trespasses upon the land, but they were not sufficient, in our opinion, to show such continuous and notorious occupation and domination over the land as would indicate to the true owner an unmistakable intention by another to own and exclusively appropriate the land.''

Nor was there constructive possession by reason of the defendants being in actual possession of an adjoining tract of land under a deed which constituted color of title to both tracts. Under the doctrine announced by this court in several cases, beginning with the case of *Haggart* v. *Rainey,* 73 Ark. 344, there is no constructive possession for the reason, as stated by Judge RIDDICK in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Moore,* 83 Ark. 377, that ''the possession of the tract is no notice to the owner of the other tract that the land is claimed adversely.'' The majority say in their opinion that this doctrine does not apply to a case where the legal title is in the State. I am unable to see why it would not apply if the statute of limitations could run against the State under any circumstances, but, as the statute of limitations does not run against the State, I fail to see why, under those circumstances, the defendants could be said to have had possession so as to raise the presumption that the title had passed from the State.

If there is a presumption at all of a grant from the State, the only ground upon which it can be based is that the defendants have continuously paid taxes on the land under color of title for a long period of time. The land being wild and unoccupied, this would constitute adverse possession so as to ripen into title by limitation as against private owners, but, since the legal title remained in the State up to a very recent date, and since the statute of limitation does not run against the State, it can not successfully be pleaded against the State's grantee within seven years of the date of the grant.

The three cases cited by the majority as supporting their conclusion that the presumption of a grant from the State is raised do not, in my opinion, support their views, as the facts of those cases are altogether different from the facts of the present case. In *Carter* v. *Goodson,* 114 Ark. 62, there was a confusion in the records of the State Land Commissioner, sufficient to raise a doubt whether or not the lands had been conveyed by the State, and this confusion was made the basis of the conclusion announced in that case that a presumption of grant would be indulged in favor of the occupant of the land. The same state of facts substantially existed in the case of *State* v. *Taylor,* and the decision was based on the same ground. In *Wallace* v. *Hill,* 135 Ark. 353, there was a right of redemption in the occupants, who were the former owners, and who held over after the sale of the land to the State for overdue taxes, and this court held that the continuous payment of taxes, coupled with possession, was sufficient to raise the presumption that the land had been redeemed through regular channels.

In the present case there is no evidence at all of any confusion in the records in the State Land Office. The undisputed evidence is that, according to those records, there had never been any grant by the State. Without actual possession of the land and without any evidence whatever of a grant, I do not think that the payment of taxes under color of title is sufficient to raise the presumption of the grant by the State in the face of a per-

fectly clear record which fails to show any defects in the State's title. It seems to me that under the circumstances of this case the following language of the late Justice Field in the case of *Oaksmith's Lessee* v. *Johnston,* 92 U. S. 343, very appropriately announces the only conclusion which ought to be reached on this subject:

"But in this country, at the present day, there can seldom be occasion to invoke the presumption of a grant from the government, except in cases of very ancient possessions running back to colonial days, as, since the commencement of the present century, a record has been preserved of all grants of the government, and of the various preliminary steps up to their issue; and provision is made by law for the introduction of copies of the record when the originals are lost."

Mr. Justice SMITH concurs in this dissent.