NALL *v.* PHILLIPS.

4-8333                                          210 S. W. 2d 806

Opinion delivered December 8, 1947.

Rehearing granted May 10, 1948.

*Arthur D. Chavis,* for appellant.

*A. F. Triplett,* for appellee.

ED. F. MCFADDIN, Justice. This is a suit between the original title owner (appellee) and the tax title purchaser (appellant).

E. W. Phillips owned a tract of 616.29 acres which forfeited for the 1931 taxes under a void description, in

that the land was described as "part of section 23." The 160-acre tract here involved was a part of the said 616.29 acres. On December 20, 1935, appellant Nall received a donation certificate from the State of Arkansas for the 160-acre tract, described as "west half of the west half of section 23," etc. This donation certificate was issued under the provisions of § 8636, *et seq.,* Pope's Digest. Nall moved to the 160 acres in January, 1936, built a house, made other improvements, and placed about 25 acres in cultivation. He complied with all the legal requirements made on a donation certificate holder, so that, on May 5, 1938, he received a donation deed from the State for the 160-acre tract, legally described as above mentioned. He has at all times continued to live on the land, and to cultivate a portion of it.

On June 14, 1940, E. W. Phillips—owner before the tax forfeiture—filed this suit in the Jefferson Chancery Court to cancel the 1931 tax forfeiture as void, and to cancel Nall's donation deed as a cloud on the title, and to remove Nall from that portion of the land of which he was in possession. Nall by proper pleadings claimed the benefit of § 8925, Pope's Digest—*i. e.,* the two-year Statute of Limitations—since he alleged that he was and had been in possession of the 160 acres since 1935. In 1940, W. W. Phillips, son of E. W. Phillips, intervened, claiming under a "No-Fence District" deed. For some unexplained reason, the case was not tried until October 30, 1946. The evidence disclosed that Nall all the time had been in actual possession of a substantial portion of the 160-acre tract.

The chancery court, relying on a surveyor's report, entered a decree on February 5, 1947, awarding Nall the 70 acres conceded to be in his actual possession, and awarding E. W. Phillips the remaining 90 acres of the 160-acre tract. The chancery decree took no notice of W. W. Phillips' deed from the No-Fence District, evidently treating the deed as a redemption by the son of the father. W. W. Phillips has not appealed; so the validity of that deed, and the efficacy of Nall's tender within the redemption period of the No-Fence District

foreclosure, are matters which pass out of this case on appeal.

From the decree awarding E. W. Phillips 90 acres of the land, Nall has appealed. After the decree of the lower court, and pending appeal, E. W. Phillips departed this life, and the action has been duly and properly revived by his heirs, and also by his personal representative; but we use here the original styling.

I. *The Rights of the Parties are to be Determined as of the Filing of the Suit.* As heretofore stated, E. W. Phillips filed this suit on June 14, 1940. Nall answered on July 3, 1940. Other pleadings were filed by the parties at intervals, until April 5, 1941. Thereafter no other amendatory pleadings were filed. The case lay dormant until July 22, 1946, when Nall sought a dismissal for failure of prosecution; and this step resulted in the trial in October, 1946. At that trial a considerable portion of the evidence offered by Phillips bore on the improving, fencing, etc., done between June 14, 1940, and the trial in October, 1946; and it appears to us that this evidence was largely responsible for the decree rendered. What transpired after June 14, 1940, can have no effect on the rights of the parties here, because, in the absence of amendatory pleadings, the rights must be adjudicated as they existed at the time the suit was filed. In *Hornor* v. *Hanks*, 22 Ark. 572 we said: "The law is expressly written, that the right of a plaintiff must be adjudicated upon as it existed at the time of the filing of his bill."

This was approved in *Winn* v. *Collins*, 207 Ark. 946, 183 S. W. 2d 593, and reiterated and quoted in *Elston* v. *Wilborn*, 208 Ark. 377, 186 S. W. 2d 662, 158 A. L. R. 179. See, also, 1 C. J. 1149 and 1 C. J. S. 1389. Therefore we determine the rights of these parties based on the possession and the conditions as they existed on June 14, 1940.

II. *The Donation Certificate.* Nall received his donation certificate on December 20, 1935. At that time the statute (then § 6947, Crawford & Moses' Digest) did not allow the holder of a donation certificate to invoke

the said two-year statute. It was Act 7 of the Acts of 1937 that extended the benefit of the two-year statute to the holder of a donation certificate. Section 6947, Crawford & Moses' Digest, as amended by Act No. 7 of 1937, is now found in § 8925, Pope's Digest. We do not need to consider in this case the wording and effect of the 1937 amendment, because Nall was in possession on the date he actually received his donation deed, and such unbroken possession continued under the deed for more than two years before this suit was filed—that is, Nall received his donation deed on May 5, 1938, and Phillips did not institute this suit until June 14, 1940.

III. *Phillips' Claim of Possession of Part of the 160 Acres.* Phillips claims that he was all the time in possession of a part of the 160 acres; and determination must be made of this factual question before we can dispose of the legal questions.

The 160-acre tract extends one mile north and south, and one-quarter mile east and west; and lies on the entire west side of section 23. On the west side of the 160-acre tract, there was the boundary line fence of the No-Fence District; but there were no fences on the north and east sides of the 160-acre tract; and the fence on the south side seems to have been constructed after this suit was filed. During all the time that Nall had his donation deed, he was in actual possession of some 40 or 50 acres located in the south part of the 160-acre tract. All of the remaining part of the 160-acre tract was woodland. Phillips owned or controlled several hundred acres adjacent to, and north and east of, this 160 acres; and his cattle roamed from his land on the north and east into the woodland on this 160 acres. In fact, until long after this suit was filed, Phillips' cattle roamed at will over the entire 160 acres, except that portion on which were located Nall's house, garden, etc. Phillips never had any of the 160 acres in cultivation, and during the entire period from Nall's receipt of his donation deed until after the filing of this suit, Phillips' only act of possession was the roaming of his cattle on this land.

The foregoing constitute the facts on which Phillips based his claim of possession; but those acts of Phillips were not so visible, notorious and continuous as to constitute possession. *Carter* v. *Stewart,* 149 Ark. 189, 231 S. W. 887, 232 S. W. 936, held that pasturing land by cattle, plus the cutting of timber for firewood, when coupled with the sale and removal of merchantable timber from the land, would—altogether—constitute adverse possession. But, here, we have only the pasturing of the woodland by the cattle, without any of the other essentials, so what is said in 2 C. J. 67 applies to this case:

"While grazing livestock over land is of course to be considered with other acts of dominion to show a possession, the mere occupancy of land by grazing livestock upon it, without substantial inclosures or other permanent improvements, is not sufficient to support a plea of limitations, and this is especially true where the claimant used no means to restrain the livestock to any particular land, or where the livestock of others was not excluded from the land. Such a use, it has been said, is to be deemed merely permissive, whether the lands are public or private, and may be terminated at any time."

We, therefore, hold that Phillips was not in actual possession of any part of the 160 acres at any time from Nall's receipt of his donation deed until after this suit was filed.

IV. *The Effect of Nall's Possession.* It is conceded that Nall had continuous actual possession of more than 40 acres of the land for more than two years next before Phillips filed this suit; and it is also conceded that Nall was holding such possession under his donation deed from the State. We have held in topic III, *supra,* that Phillips was not in actual possession of any of the 160 acres during any of the time that Nall was in possession under his tax deed. Under this state of the record, Nall invokes that line of cases which holds that actual possession of a part of a tract of land under a deed which definitely describes the entire tract is, in law, possession to the full limits of the described tract. We have scores of cases which state and apply this rule. Some of them

are: *Crill* v. *Hudson,* 71 Ark. 390, 74 S. W. 390; *Sparks* v. *Farris,* 71 Ark. 117, 71 S. W. 945; *Connerly* v. *Dickinson,* 81 Ark. 258, 99 S. W. 82. For other cases so holding, see West's Arkansas Digest, "Adverse Possession," § 100.

The appellee, on the other hand, contends that this rule of "holding to the extent of the deed boundaries" is at most a rule of constructive possession, and that it does not apply in favor of a tax title claimant as against the original owner of the legal title. Appellee says that constructive possession follows the legal title, and that Phillips' legal title is good until Nall's actual adverse possession ousts Phillips' constructive possession, and that the rule of "holding to the extent of the deed boundaries" cannot be used as the equivalent of actual adverse possession. To sustain his statements, appellee cites and quotes from *Woolfolk* v. *Buckner,* 67 Ark. 411, 55 S. W. 168. Among other expressions, this appears in the opinion:

"If the original owner of the legal title was in constructive possession because he had the legal title, how could the claimant under the void tax title have the constructive possession at the same time? To so hold would be to give to possession under a void tax title more legal effect than to possession under a valid legal title— to give to the mere shadow more force than to the legal title. This cannot be."

The above-quoted language might easily lend itself to the construction that the appellee places thereon, because the opinion does not expressly state that the original title holder remained all the time in actual possession of a portion of the land involved in the litigation, yet such vital fact is true, as will be shown from several contemporaneous opinions interpreting *Woolfolk* v. *Buckner.* They point out the continued actual possession of the legal title holder as the distinguishing point in the case.

In *Crill* v. *Hudson,* 71 Ark. 390, 74 S. W. 299 Mr. Justice Wood—who was a member of the court when *Woolfolk* v. *Buckner* was decided—used this language:

"Possession of a part, under color of title, for the requisite period of time gives title by limitation. *Pillow* v. *Roberts,* 12 Ark. 822; *Wilson* v. *Spring,* 38 Ark. 181; *Elliott* v. *Pearce,* 20 Ark. 508; *Ib.* 542; *McConnell* v. *Swepston,* 66 Ark. 141, 49 S. W. 566; *Finley* v. *Hogan,* 60 Ark. 499, 30 S. W. 1048. *The cases of Woolfolk* v. *Buckner, 60 Ark. 163, 29 S. W. 372, and Id., 67 Ark. 411, 55 S. W. 168, do not apply to this cause. In those cases the owner was in actual possession of a part of the land.* In this case the owner had no actual possession of any part of the land, and, when appellants took possession of a part, that possession extended to the limit of their grant. *Logan* v. *Jelks,* 34 Ark. 547; *Wilson* v. *Spring,* 38 Ark. 181; *Worthen* v. *Fletcher,* 71 Ark. 386, 42 S. W. 900." (italics our own).

Again, in *Jones* v. *Pond,* 79 Ark. 194, 96 S. W. 756 Mr. Justice Wood, in discussing part possession of a tract of land as possession to the extent of the boundaries, pointed out the distinguishing features evident in *Woolfolk* v. *Buckner* in this language:

"Under the decisions of this court in *Carpenter* v. *Smith,* 76 Ark. 447, 88 S. W. 976; *Sparks* v. *Farris,* 71 Ark. 117, 71 S. W. 255, 945; and *Crill* v. *Hudson,* 71 Ark. 390, 74 S. W. 299, when appellant's ancestors took possession of part of the land described in his tax deed, that possession extended to the limit of his grant. *There was no one in the actual occupancy of the residue of the land not occupied by B. F. Jones, thus distinguishing the case in that particular from Woolfolk* v. *Buckner, 67 Ark. 411, 55 S. W. 768."* (italics our own).

In *Sparks* v. *Farris,* 71 Ark. 117, 71 S. W. 945 Chief Justice Bunn—who was also Chief Justice when *Woolfolk* v. *Buckner* was decided—reconciled the two rules of "constructive possession follows the legal title" and "holding to the extent of the deed boundaries" in this language:

"There is no claim that the appellants had actual possession of any of the land during the running of the two years.

"It has, in one or more cases, been held by this court that in such cases, where the owner and tax purchaser both held actual possession of lands sold for taxes, the latter having actual possession of part, and the former of the remainder, and where the tax deed was void, then in such case the holder of the tax deed held the possession only so far as his actual possession extended, because, the owner having possession also of the remainder, his constructive possession of the whole under the description in his deed was superior to the constructive possession of the purchaser holding under a defective deed. But this rule does not pertain where the actual possession is not divided between the two, for the void deed in such case indicates the possessory claim of the holder thereof, and all the world must take notice thereof, and such is the essence of adverse possession."

Applying the principles of the foregoing cases to the case at bar, the result is this: if Phillips had been in actual possession of any part of the 160 acres during any of the two-year period as fixed by the statute, then Nall could only succeed in retaining in this litigation the land that Nall had actually occupied continuously for the two-year period; but since Phillips was not in actual possession of any of the 160 acres at any time in the two-year period as fixed by the statute, then the rule of "holding to the extent of the deed boundaries" applies, and Nall is entitled to prevail as to the entire 160 acres.

V. *The Void Tax Forfeiture*. The fact that the 616.29 acres forfeited under a void description in 1931 is conceded. But the State Land Commissioner, in executing his donation certificate in 1935, and in executing his deed in 1938, used a valid and legal description for the 160 acres here involved (*i. e.*, West half of the West half of section 23), so Nall, by holding possession under his deed for more than two years, brought himself within the purview of *Wilson* v. *Triplett*, 204 Ark. 902, 165 S. W. 2d 943, wherein we reaffirmed our previous holdings that, although land may be forfeited under a void description, still, if the Land Commissioner deeds a part of the tract under a proper description, and the tax title

holder remains in possession for two years, he becomes entitled to the protection of § 8925, Pope's Digest.

*Conclusion*: The decree of the chancery court is reversed and the cause remanded with directions to enter a decree in favor of Nall for all of the 160-acre tract involved in this suit.

---

ROBINS, J., on rehearing. There is no dispute as to the principles of law governing this case. The only question is one of fact, and that is confined within narrow limits and apparently should be of easy solution. The fact situation is one about which there ought to be no room for argument, for the means of making it certain at the trial below were available to both sides.

A correct map of the lands involved in this suit and other adjacent lands of appellee, showing houses, fences and other artificial monuments would have furnished the answer to the question of fact about which the uncertainty has arisen. A map was introduced in evidence, but it did not show these structures, and the testimony of witnesses who indicated location of objects on this map as "here" was, no doubt, helpful to the lower court, but *we* have only the map and the record of what these witnesses said; and we have had difficulty in ascertaining where the pointed out locations were.

There seems to be no dispute that appellee originally owned the entire 160 acre tract, which was a part of a larger tract, known as the Taylor plantation, owned by appellee. It is also conceded that the tax sale through which appellant Nall obtained his title was void; and the sole reliance of appellant to sustain his claim is possession for two years under his void deed from the State, which, he asserts, vests title in him under the provisions of § 8925, Pope's Digest. Appellee concedes, and the lower court found, that appellant had shown such possession as to 70 acres.

The sole issue in this case then is: Had the appellant such possession of the remaining 90 acres as to give him title thereto under the two-year statute, *supra?*

Appellant does not claim that he has had actual possession of said 90 acres or that it has ever been enclosed with the 70 acre tract. But on his behalf it is insisted that, since he has had actual possession of part of the 160 acre tract conveyed to him, he has during the same time had constructive possession of the remainder of the land described in his deed.

The lower court found that appellant had not had such constructive possession, but, on the contrary, appellee had all the while had actual possession of the 90 acres.

From a careful review of the record we cannot say that this finding is against the preponderance of the testimony. The testimony of appellee tended to show that the entire 160 acre tract, along with other lands, was enclosed by fence owned by appellee and fence of a fencing district to which he had joined, and that all this land, except the 70 acre tract, was used regularly as a pasture by appellee.

Appellant admitted that appellee's cattle were pastured in the 90 acre tract, and appellee's theory of the matter is somewhat strengthened by the fact that, after this suit was begun, appellee, at appellant's request, built fences along the boundary of the 70 acre tract awarded to appellant for the purpose of protecting appellant's crops from the ravages of appellee's cattle. Now it is difficult to understand why, if appellant had been in possession of the entire 160 acre tract, appellant would have asked for a fence to protect part of his land from depredations of appellee's cattle roaming on another part of appellant's land.

Appellee claims and the lower court found that appellee had been in possession of the 90 acres; but assuming that neither of the parties had actual possession, appellee, having the superior title, must be deemed to have been in possession. 2 C. J. S. 800.

Since the decree of the lower court is not shown to be contrary to the weight of the testimony, the rehearing must be granted and the decree of the lower court affirmed.

Ed. F. McFaddin, Justice (Dissenting). The majority is granting a rehearing in this case, setting aside the former opinion and changing the result. From this, I respectfully dissent.

This case was originally submitted on November 10, 1947. The *entire transcript* was read; and an opinion was delivered on December 8, 1947, which reversed and remanded the cause with directions. No dissents appeared as noted to that opinion. On January 12, 1948, the case was submitted on rehearing; and now—four months after the rehearing was submitted—the majority has granted the rehearing, and affirmed the trial court, because the majority says that it is unable to determine wherein the trial court was in error. The opinion of December 8, 1947, (which was then the majority opinion) pointed out the error of the trial court. This former majority opinion has now become the minority opinion.

I still adhere to the views stated in the opinion of December 8, 1947; and I am authorized to state that Mr. Justice Frank G. Smith joins me in this dissent.