GRIFFIN v. ISGRIG.

5-1251                                                    302 S. W. 2d 777

Opinion delivered June 3, 1957.

[Rehearing denied July 1, 1957]

*Frank J. Wills,* for appellant.

*Gordon H. Sullivan* and *Harry C. Robinson,* for appellee.

Ed. F. McFaddin, Associate Justice. This is a suit involving lands in Sections 22, 23 and 24, in Township 1 North, Range 11 West, in Pulaski County. All the parties to this litigation concede that these present lands are accretions.[1]

Appellees, W. B. Isgrig and Southern Investment Company, filed this suit against appellant, W. H. Griffin. Isgrig claimed that he owned the E ½ of Sec. 22; the S ½ SW ¼ Sec. 23; the Frl. SE ¼ Sec. 23; and the Frl. NW ¼ Sec. 23, together with all accretions. The Southern Investment Company claimed that it owned the N ½ SW ¼ Sec. 23 and the S ½ SW ¼ NW ¼ Sec. 24, with all accretions. Both plaintiffs claimed that Griffin was trespassing and cutting timber on the lands owned by the plaintiffs, and should be enjoined and restrained. Plaintiffs also prayed to have their title quieted to the lands they owned, as just described. Griffin claimed the lands (a) by deeds; (b) by adverse possession; and (c) by reason of certain previous litigation asserted by him as being *res judicata* against the plaintiffs.[2]

The Chancery Court[3] appointed a Master, who heard the evidence over a period of several months and made a report of 30 pages. The Chancery Court entered a decree based on the Master's Report and quieted the title of Isgrig and Southern Investment Company to all of the lands in Sections 22, 23 and 24, except a specific tract awarded Griffin on his plea of adverse possession. From failure to recover all of the lands in Sections 22, 23 and 24, Griffin has appealed; and Is-

---

[1] The survey of 1857 in the office of the State Land Commissioner (of which survey we take judicial notice—see West Ark. Digest "Evidence", Key No. 23—), shows lands in existence in said sections in 1857. But the parties herein seem to agree that the Arkansas River changed its course southerly and southwesterly, so as to erode the original lands, and then later changed its course northerly and easterly, so as to form accretions to the riparian shore. No one herein has made any claim involving the application of § 10-203 Ark. Stats., so we treat the lands herein involved as accretions to the riparian shore.

[2] As hereinafter stated, the *res judicata* matter is not urged on appeal.

[3] Griffin at one time sought to have the cause transferred to law as an ejectment action, but later abandoned that claim and filed a cross complaint against his grantor, Baldwin. The cross complaint against Baldwin is not now before us in this case.

grig and Southern Investment Company have cross appealed from so much of the decree as awarded Griffin the small particularly described tract of a few acres in Section 23.

Appellant argues the case in this Court under six assignments, being: (I) The Chancellor was not legally bound to adopt the Master's recommendations; (II) Appellant's demurrer to the evidence should have been sustained; (III) the decree is against the preponderance of the evidence; (IV) there is no competent proof upon which to determine the accretion boundaries; (V) the fee of appellees' engineer should not have been taxed as costs; and (VI) appellant should have been awarded damages.

I. *Appellant's First Point: "The Chancellor was not legally bound to adopt the Master's recommendations."* The appellant objects to certain language that the Chancellor used in entering the decree based on the Master's Report. Of course the Chancery Court was not *legally bound* to adopt the Master's Report (see § 27-1815 Ark. Stats.); but in this case the Chancellor did adopt the Master's Report and entered a decree in accordance with it. The question, here, is whether the decree as entered is against the preponderance of the evidence or erroneous for some other reason. Having disposed of the procedural point, we will group appellant's other points under convenient topic headings; and will consider, first, Griffin's claims to the lands involved. As heretofore stated, he claimed by (a) deeds, (b) adverse possession, and (c) *res judicata.* The matter of *res judicata* is not argued on appeal and is therefore abandoned, so we consider the other two claims.

II. *Griffin's Claim Based On Deeds Of Record.* There were only two conveyances offered to support Griffin's record title.

(a) There was a deed from R. F. Baldwin and wife to W. H. Griffin, dated May 17, 1940, and conveying "all of the lands of the grantors lying north and east of Fourche Bayou, and all accretions thereto, in Sec-

tions 9, 10 and 15, in Township 1 North, Range 11 West, and more particularly described as follows". In the "particularly described" lands there is no reference to any lands in any sections except 9, 10 and 15. The only way that Griffin could claim that this deed covered the lands involved in this litigation, which are admitted to be south of the south line of Section 15 as extended,[4] would be to show that said lands were accretions to the riparian shore of lands in Sections 15, 10 and 9. There is no sufficient proof that the lands involved in this litigation—south of the south line of Section 15 as extended easterly—are accretions to any lands in Sections 9, 10 or 15. The deed from Baldwin to Griffin did not invest Griffin with a title sufficient to award him the lands herein involved.

(b) There is a quitclaim deed from Gertrude W. Johnson, widow of Dr. Chas. F. Johnson, to W. H. Griffin and wife, dated December 20, 1952, and conveying certain definitely described lands in Section 15, Township 1 North, Range 11 West, "and all accretions thereto". What we have said in regard to the Baldwin deed above applies equally here. In short, we find that Griffin failed to establish his title under his claim of *deeds of record*.

III. *Griffin's Claim Based On Adverse Possession.* Griffin points to the following to establish his adverse possession:

(a) That in 1934 he leased from R. F. Baldwin all of Baldwin's lands lying between Fourche Bayou and the Arkansas River; and that he (Griffin) continued to hold the Baldwin lands under said lease until he purchased them in 1940 by the deed from Baldwin hereinbefore mentioned.

(b) That in 1952 Griffin executed a timber deed to McBurnett Corporation.

---

[4] It is well known that Section 15 is immediately north of Section 22, and that Sections 23 and 24 lie east of Section 22. So the south line of Section 15 extended easterly to the river would place all of Sections 22, 23 and 24 south of such extended line.

(c) That in 1940 Griffin had certain lands placed on the tax books of Pulaski County and began the payment of taxes on same, among which lands were included "accretions to Frl. SE ¼ of Section 15 and accretions to NW ¼ NW ¼ Section 15", both in Township 1 North, Range 11 West; and

(d) That from 1934 (when he first leased the lands from Baldwin) until the present time, Griffin has pastured not only the lands north of the south line of Section 15, but also the lands south of the south line of Section 15 as extended; that at one time he erected some sort of a fence that embraced some of these lands (although the fence was soon washed away); that later he blazed trees to indicate his claimed boundary; that people in the vicinity from time to time got his permission to cut timber from the lands for firewood purposes; that many people knew he was claiming these lands in Sections 22, 23 and 24.

It must be remembered that—based on adverse possession—the Chancery Court awarded Griffin a small definitely described portion of lands south of the south boundary line of Section 15, since it was shown that Griffin had such small tract under fence and in cultivation. But, with the exception of this small tract so awarded him, we hold that Griffin's proof of adverse possession for all of the remainder of the lands, south of the south boundary line of Section 15 as extended, fails to measure up to the quantum and quality of proof of adverse possession as required by law.

There is a line of cases holding that one in possession of land under a valid deed describing the tract, by actually holding and occupying a portion of the tract is deemed to have adverse possession to the extent of the boundaries described in the deed. *Nall* v. *Phillips*, 213 Ark. 92, 210 S. W. 2d 806; *Connerly* v. *Dickinson*, 81 Ark. 258, 99 S. W. 82; *Crill* v. *Hudson*, 71 Ark. 390, 74 S. W. 299. But the case at bar is not like the cited cases: because, here, Griffin does not have a deed of record, describing his boundaries, to any lands south of the south line of Section 15 as extended. So, in or-

der to prevail on his claim of adverse possession, Griffin must show actual or pedal possession to the extent of his boundaries. (*Sturgis* v. *Hughes*, 206 Ark. 946, 178 S. W. 2d 236.)

In the recent case of *Adkisson* v. *Starr*, 222 Ark. 331, 260 S. W. 2d 956, we had occasion to consider this matter of adverse possession of accretions; and the evidence in the case at bar is no stronger on this matter of adverse possession than was the evidence rejected by us in *Adkisson* v. *Starr*. So, we hold that Griffin has failed in his plea of adverse possession to any of the lands south of the south boundary line of Section 15 as extended, except that small portion specifically described and awarded him in the decree herein.

IV. *The Decree Quieting Appellees' Title.* Having decided that Griffin cannot prevail on his claim to any of the lands involved except the small portion awarded him, we come next to the question of whether the Chancery Court should have quieted the title of the appellees, Isgrig, *et al*, on the showing they made. They merely showed that they held deeds from their immediate grantors to the lands described in Sections 23 and 24. The appellees did not attempt to deraign the title of their grantors back to the sovereignty of the soil, nor did appellees establish that they or their grantors had acquired title to the lands by adverse possession. Thus, appellees only showed that they had deeds of record describing the premises. Such a showing is good for some purposes, but is not sufficient to justify a decree quieting title. In *Coulter* v. *O'Kelly*, 226 Ark. 836, 295 S. W. 2d 753, we held: "To be entitled to a decree quieting title, in an adversary suit, the plaintiff must deraign title from the government or from someone who is shown to be owner of the land by possession and/or payment of taxes". So appellees did not offer sufficient proof to justify the decree quieting their title.

The decree quieting appellees' title was rendered by the Chancery Court on May 17, 1956; and our decision in the case of *Coulter* v. *O'Kelly*, *supra*, was not announced until October 29, 1956. We confess that prior

to *Coulter* v. *O'Kelly, supra,* there was language in some of our opinions, such as *Robeson* v. *Kempner,* 182 Ark. 746, 32 S. W. 2d 616,[5] and *Skelton* v. *Ferguson,* 222 Ark. 847, 262 S. W. 913,[6] which could have misled appellees and the Chancery Court into believing that the appellees in the case at bar were not required to deraign a title. Thus, in order to afford complete equity, we are remanding the case to the Chancery Court to allow appellees to offer proof of title sufficient to support a decree under the holding in *Coulter* v. *O'Kelly, supra.* The proof will be limited to that one point, and future costs on that point will naturally be taxed against the appellees.

V. *Cross Appeal.* As heretofore stated, the appellant was awarded a small particularly described tract of a few acres in Section 23 because of his proof as to adverse possession; and appellees have cross appealed from that portion of the decree. A review of the evidence fails to convince us that the decree is in error in this regard, so the decree is affirmed on the cross appeal.

VI. *Costs.* Some complaint is made about the taxing of costs. We find no error on any item except the $420 survey fee of Chris Wright. The Chancery Court ordered this item paid equally by appellant and appellees. We hold that the appellees should pay this entire item. See *Ark. State Game & Fish Comm.* v. *Kizer,* 222 Ark. 673, 262 S. W. 2d 265. The costs in this Court are taxed against appellant.

Affirmed in part; reversed and remanded in part.

Mr. Justice Robinson disqualified and not participating.

---

[5] In *Robeson* v. *Kempner* we used this language: "Our Statutes do not require that plaintiffs in suits of this character be required to set out therein their chain of title. In ejectment suits, the statutes make such requirements. In suits in equity to quiet titles, allegations of ownership are sufficient upon which to base or found the actions."

[6] In *Skelton* v. *Ferguson* there is this statement: "In a suit to quiet title, plaintiff is not required to deraign his title".